Brian P. Leitch, Esq.
Daniel M. Lewis, Esq.
Michael J. Canning, Esq.

ARNOLD & PORTER LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-1370
(303) 863-1000
          - and -
555 Twelfth Street, NW
Washington, DC 20004-1206
(202) 942-5000
              - and -
399 Park Avenue
New York, New York 10022
(212) 715-1000

Lawrence E. Rifken, Esq. (VSB No. 29037)
Douglas M. Foley, Esq. (VSB No. 34364)
David I. Swan, Esq.
McGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102-4215
(703) 712-5000

*Counsel to the Debtors and Debtors-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 04-13819 |
|  | ) | Jointly Administered |
| US AIRWAYS, INC., <u>et al.</u>,[1] | ) | Chapter 11 |
|  | ) | Hon. Stephen S. Mitchell |
| Debtors. | ) |  |

**INTERIM AND FINAL ORDER GRANTING DEBTORS' MOTION FOR AN ORDER
AUTHORIZING DEBTORS TO (I) OBTAIN JUNIOR SECURED DEBTOR-IN-
POSSESSION FINANCING FROM EASTSHORE AVIATION, LLC AND
(II) ENTER INTO JET SERVICE AGREEMENT PURSUANT TO
<u>11 U.S.C. §§ 105, 362, 363. 364 AND 507</u>**

Upon the motion, dated February 18, 2005 (the "Motion")[2] (Docket No. 1866) filed

---

[1] The Debtors are the following entities: US Airways, Inc., US Airways Group, Inc., PSA Airlines, Inc., Piedmont Airlines, Inc. and Material Services Company, Inc.

[2] Unless otherwise defined herein, capitalized terms used in this Order shall have the meaning ascribed to them in the Motion.

with the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division (the "Court"), of US Airways, Inc. (the "Borrower"), and each of the other above-captioned debtors and debtors-in-possession in the jointly administered Chapter 11 cases (collectively, the "Guarantors" and, together with the Borrower, the "Debtors") pursuant to Sections 105, 362, 363, 364 and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

(a)     seeking this Court's authorization for the Borrower to obtain and each of the Guarantors to guaranty up to $125,000,000 (the "Borrowing Amount") in principal amount of junior secured debtor in possession financing (the "DIP Facility") in accordance with the terms and conditions set forth in the Loan Agreement, and to incur the loans, advances, interest obligations, fees, expenses and other obligations, liabilities and indebtedness described in the Loan Agreement (collectively, the "DIP Obligations");

(b)     seeking this Court's authorization pursuant to Section 364(c)(3) of the Bankruptcy Code, for the Debtors to provide the Lender with junior security interests upon certain property of the Debtors' estates to secure repayment of the DIP Obligations as provided in, and as contemplated by, the Loan Agreement, as supplemented by this Order;

(c)     seeking this Court's authorization, pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, for the Debtors to grant to the Lender the DIP Super-Priority Claim (as defined below) in respect of the DIP Obligations with priority over any and all administrative expenses except as specifically provided for herein; and

(d)     authorizing the Debtors entry into the Jet Service Agreement attached as <u>Exhibit B</u> to the Motion;

and it appearing to the Court that the relief requested in the Motion is necessary to provide the Debtors with sufficient capital to continue their business operations and to preserve the going concern value of their businesses and to provide other business benefits to the Debtors; and it further appearing to the Court that notice of the Motion is sufficient and complies with the requirements of Bankruptcy Rules 4001 (c) and 4001(d); and for good cause shown;

**THE COURT HEREBY FINDS THAT:**

A.     On September 12, 2004 (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court.

B.     The Debtors have continued in the management and operation of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.     On September 21, 2004, the United States Trustee appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in these Cases.

D.     This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these Cases, and over the persons and property affected hereby.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are Sections 105, 362, 363, 364 and 507 of the Bankruptcy Code and Rule 4001 (c) and (d) of the Bankruptcy Rules.  Venue of the Cases in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    An immediate need exists for the Debtors to obtain funds and financial accommodations with which to continue their business operations, meet their payroll and other necessary, ordinary course business expenditures, acquire goods and services, administer and preserve the value of their estates, and maintain adequate cash balances customary and necessary for companies of this size in this industry to maintain customer confidence.  The ability of the Debtors to finance their business operations requires the availability of additional working capital, the absence of which would immediately and irreparably harm the Debtors, their estates, and their creditors.  The Debtors need the working capital to preserve the confidences of vendors, suppliers and customers and to preserve the going concern value of their business.

F.    If the Court were not to grant the interim borrowing authority sought by this Motion, a possibility exists that the Lender could make an alternative business arrangement that would materially reduce the value of this transaction to it and its affiliates, and could cause it to withdraw its offer to enter into the Loan Agreement.  Such withdrawal would cause immediate and irreparable harm to the Debtors' efforts to successfully reorganize.

G.    The Debtors have attempted, in good faith, to obtain junior financing from sources other than the Lender.  The Debtors are unable to obtain unsecured credit allowable only as an administrative expense under section 503(b)(1) of the Bankruptcy Code, pursuant to section 364(b) of the Bankruptcy Code.

H.    The Debtors are able to obtain sufficient credit only pursuant to a combination of sections 364(c)(1) and 364(c)(3) of the Bankruptcy Code and under the terms and conditions provided in the Loan Agreement and this Order.  Specifically, the Debtors are unable to borrow money or otherwise obtain needed financial accommodations without

the Debtors' granting to the Lender (i) security interests pursuant to Section 364(c)(3) of the Bankruptcy Code in the property of the Debtors that constitutes Pre-Petition Collateral and Replacement Collateral (each as used in the Supplemental Cash Collateral Order, and together, the "Collateral"), which shall be junior and subordinate to (a) the prepetition security interests and liens and "Replacement Liens" (as used in the Supplemental Cash Collateral Order) securing the "ATSB Loan Obligations" (as defined in the Loan Agreement), and (b) the "Carve-Out" (as used in the Supplemental Cash Collateral Order, including any fund for the payment thereof), and (ii) the DIP Super-Priority Claim (as defined below), which is junior to and subordinate to (x) the Super-Priority Claim (as used in the Supplemental Cash Collateral Order) granted to the ATSB Lender Parties pursuant to Section 9(e) of the Supplemental Cash Collateral Order (the "ATSB Lender Parties Super-Priority Claim"), (y) the Carve-Out (including any fund for the payment thereof) and (z) the "Chapter 5 Avoidance Fund" (as used in the Supplemental Cash Collateral Order), but with priority over all other administrative expense claims pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, in each case as provided by this Order.

    I.    The ability of the Debtors to finance their business operations and the availability of sufficient working capital through the incurrence of indebtedness for borrowed money and other financial accommodations is vital to the Debtors' continued ability to preserve and maintain their going concern value.

    J.    The relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the preservation of their estates.

    K.    It is in the best interest of Debtors' estates to establish the DIP Facility contemplated by the Loan Agreement.

L. The terms and conditions of the DIP Facility, as described in the Loan Agreement and the Motion, and as described to the Court at the hearing on the Motion, are fair, reasonable and the best available under the circumstances, reflect the Debtors' exercise of reasonable and prudent business judgment, and are supported by reasonably equivalent and fair value.

M. The Debtors are in need of exit financing and the DIP Facility provides the Debtors the opportunity to obtain $125 million of this needed financing, subject to higher and better offers for a sixty day period.

N. The Debtors, the Lender, and their respective agents, advisors, and employees have acted in good faith in negotiating, consenting, and agreeing to the Loan Agreement as contemplated and provided by this Order. The negotiation of the terms and provisions of this Order have been conducted at arms' length, and the Debtors believe that such terms and provisions are fair and reasonable under the circumstances and reflect the Debtors' exercise of reasonable and prudent business judgment consistent with the Debtors' fiduciary duties.

O. Nothing in the Order, the Loan Agreement, or any of the other Definitive Documentation or related documents shall in any way be construed or interpreted to impose or allow the imposition upon the Lender (in its capacity as such) or its respective agents, advisors, and employees (in their capacities as such) any liability for any claims arising from the prepetition or postpetition activities of the Debtors or any of their affiliates in the operation of their businesses, or in connection with their restructuring efforts. In exercising any of their rights or remedies, as and when permitted, pursuant to this Order, the Loan Agreement, Group's guaranty of the Loan Agreement (the "Guaranty") or any of the Definitive Documentation, the Lender shall not be deemed to be in control of the

operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

P.    The Jet Service Agreement is based on a sound business purpose, is compatible with the Debtors' business plan, was proposed in good faith and is a requirement for the Lender's entry into the Loan Agreement.

Q.    Notice of the hearing (the "Hearing") and the relief requested in the Motion was proper and adequate and no other or further notice is required under any provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Rules of this Court.

NOW, based upon the Motion of the Debtors and the record before this Court with respect to the Motion made by the Debtors at the Hearing, and good cause appearing therefor,

**IT IS HEREBY ORDERED** that:

<u>**INTERIM APPROVAL OF AND AUTHORIZATION AS TO BORROWING AND SECURITY**</u>

1.    <u>Approval of DIP Facility</u>.  Upon the entry of this Order, each of the Debtors is authorized to:

(a)        establish the DIP Facility on terms and conditions that are consistent with the Loan Agreement and this Order;

(b)        subject to the requirement in Paragraph 2 below, execute and deliver to the Lender such Definitive Documentation described in the Loan Agreement as to which each such Debtor is a party;

(c)     with respect to the Borrower, borrow up to $75,000,000 (the "Interim

Borrowing Amount") and, with respect to each Guarantor, guaranty

the Interim Borrowing Amount, in each case on terms and

conditions that are consistent with the Loan Agreement and this

Order, and

(d)     pay such fees and expenses payable to or on behalf of the Lender,

as described in the Loan Agreement.

2.      Authorization to Execute Definitive Documentation.  The Debtors are

hereby authorized and empowered to do and perform all acts and to make, execute and

deliver the Definitive Documentation and all instruments and documents that may be

required or necessary for the performance by the Debtors under the DIP Facility and the

creation and perfection of the security for the DIP Obligations described in the Loan

Agreement and this Order, subject to the provisions of Paragraph 10 hereof.  The

Definitive Documentation shall be valid and enforceable against the Debtors and all other

parties in accordance with the terms hereof.  The Debtors are further authorized and

empowered, without further approval of this Court, to execute and deliver one or more

amendments to the Loan Agreement and the Definitive Documentation (in accordance

with and subject to their respective terms and conditions) for the purpose of, among other

things, amending the provisions of the Loan Agreement or Definitive Documents to reflect

agreements among the parties thereto in respect of matters deferred beyond the closing

date thereunder, provided, however, that any such amendments shall not, without Court

approval, increase the Borrowing Amount.  The Debtors shall provide five (5) business

days' prior written notice of any amendment proposed to be entered into pursuant to this

Paragraph 2 to the ATSB Lender Parties and to each statutory committee appointed in the Cases (each, a "Committee"), together with a copy of such proposed amendment.

3.　　(a)　　<u>DIP Liens</u>.  The Debtors are hereby authorized to grant to the Lender, and the Lender is hereby granted, pursuant to Section 364(c)(3) of the Bankruptcy Code, valid, perfected and enforceable junior security interests in and liens in the Collateral (collectively, the "DIP Liens") to secure all of the DIP Obligations, such DIP Liens being junior only to (i) the pre-petition liens and security interests and the Replacement Liens securing the ATSB Loan Obligations and (ii) the Carve-Out (including any fund for the payment thereof) and otherwise subject to the Permitted Encumbrances as provided for in the Loan Agreement.

(b)　　<u>Guarantied Obligations</u>.  The Lender may not request and shall not accept, nor shall the Guarantors make, any payment upon the Guarantied Obligations in contravention of Section 3.08 of the Loan Agreement.

4.　　<u>Priority of DIP Liens</u>.  The DIP Liens are senior to any liens arising after the Petition Date other than the Replacement Liens (as defined in the Supplemental Cash Collateral Order) and the Carve-Out (including any fund for the payment thereof) (including, without limitation, any liens or security interests granted in favor of any domestic or foreign federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors) and are subject to the Permitted Encumbrances.  No other claim or lien having a priority superior to or *pari passu* with those granted by this Order, the Loan Agreement and the Definitive Documentation to the Lender shall be granted or allowed while any portion of the DIP Obligations arising under the DIP Facility remain outstanding.

5.      <u>Relief From Automatic Stay</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby lifted to the extent necessary to permit (i) the Debtors to grant the DIP Liens and to perform the Debtors' obligations to the Lender under the Loan Agreement and the Definitive Documentation, and (ii) the exercise of the rights or remedies by the Lender following an Event of Default pursuant to the terms of Paragraph 20 below.

6.      <u>Use of Advances</u>.  The Debtors shall use advances under the DIP Facility or proceeds of any Collateral only as provided in the Loan Agreement, the Definitive Documentation and the Supplemental Cash Collateral Order, as amended or superseded. For purposes of this Order, "proceeds" of any collateral shall mean proceeds (as defined in the Uniform Commercial Code) of such collateral as well as (i) any and all proceeds of any insurance, indemnity or warranty or guaranty payable to the Debtors from time to time with respect to any of such collateral, (ii) any and all payments (in any form whatsoever) made or due and payable to the Debtors in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of such collateral by any governmental body, authority bureau or agency (or any person under color of governmental authority), and (iii) any other payments, dividends, interest or other distributions on or in respect of any of such collateral.

7.      <u>Payments Upon Prepetition Debt</u>.  Other than payments to the ATSB Lender Parties (in their respective capacities as such) pursuant to the Supplemental Cash Collateral Order or otherwise, the Debtors shall not be permitted to make any payments on any prepetition debt prior to the effective date of a plan or reorganization except (a) with respect to the prepetition obligations as set forth in this Order, in the orders entered with respect to the Debtors' motions filed on the Petition Date, or as otherwise

provided in any other orders approved by this Court, (b) as otherwise provided in the Loan Agreement or the Definitive Documentation, or (c) to provide a cure payment to any third party, in each case to the extent permitted by the Bankruptcy Code or this Court.

8.      DIP Super-Priority Claim.  If, after the indefeasible repayment in cash in full of the ATSB Loan Obligations, the Collateral proves insufficient to repay the DIP Obligations in full, the Lender shall be entitled to recover on account of its administrative expense claim, which shall have priority, under sections 364(c)(1) and 507(b) of the Bankruptcy Code and otherwise, over all other administrative expense claims and unsecured claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 546(c), and 1114 of the Bankruptcy Code (the "DIP Super-Priority Claim"). Notwithstanding the foregoing, the DIP Super-Priority Claim is expressly subject and subordinate to (i) the Carve-Out (including any fund for the payment thereof), (ii) the Chapter 5 Avoidance Fund and (iii) the ATSB Lender Parties Super-Priority Claim.  The DIP Super-Priority Claim is hereby granted (without the need to file any further notice or pleading, or to make any demand) as an allowed claim pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, and is limited in amount to the aggregate amount by which the Collateral is insufficient to repay the DIP Obligations in full, after the ATSB Loan Obligations have been repaid in full.  Nothing in this Order shall be construed to alter the priority of the liens and claims granted in the Supplemental Cash Collateral Order.

9.      Application of Payments on DIP Obligations.  All amounts applied to the payment of the DIP Obligations shall be applied thereto in the manner set forth in the Loan Agreement and/or the Definitive Documentation.

10.    <u>Automatic Perfection of DIP Liens</u>.  This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens, and any and all security interests and liens granted hereunder are perfected immediately and without further act or deed, including the necessity of the execution by the Debtors, or the filing, recording or noticing, of financing statements, mortgages, deeds of trust, notices of lien, aircraft mortgages, security agreements, or other filing or recordings customarily made or which may otherwise be made or required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens upon the Collateral, or to entitle the Lender to the priority granted herein (including, in respect of cash or cash equivalent, any requirements that the Lender have possession of or dominion and control over, any such cash or cash equivalent in order to perfect an interest therein). The Debtors may execute and the Lender may file or record financing statements, mortgages or other instruments to evidence and perfect the Liens authorized hereby and the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby lifted to the extent necessary to permit such actions; provided, that (i) the ATSB Lender Parties shall receive seven (7) days' notice of the Debtors' execution of, and the Lender's filing or recording, of financing statements, mortgages or other instruments to evidence and perfect the Liens, and (ii) all such financing statements, mortgages and other instruments to evidence and perfect the Liens must be reasonably satisfactory to the ATSB Lender Parties in both form and substance.  For the avoidance of doubt, no filing or recordation shall be necessary or required in order to evidence, create or perfect any such DIP Lien.  Subject to this paragraph 10, the Debtors are authorized and directed to execute and deliver all instruments and documents prepared by the Lender, and subject to paragraph 12 hereof, to pay all reasonable expenses and fees that are reasonably required or reasonably

necessary to facilitate any such filings or recordings reasonably elected to be made by the Lender.

11. <u>Order may be Filed as Financing Statement</u>. The Lender may file a xerographic copy of this Order as a mortgage, financing statement or similar perfection document with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any of the Debtors have real or personal property; provided that the ATSB Lender Parties shall receive seven (7) days' notice of the Lender's intent to make such filings, and the recording offices in which they shall be made.

12. <u>Reimbursement of Lender's Expenses</u>. The Debtors are hereby authorized to pay the Lender's reasonable out-of-pocket expenses of up to a maximum of $200,000 relating to (i) the Lender's due diligence investigation of the Debtors, (ii) the negotiation of the Loan Agreement and the Jet Service Agreement, (iii) the negotiation, execution and delivery of the Definitive Documentation and any amendments thereto, (iv) participation in the Court proceedings and the Plan formation process, and (v) the consummation of the transactions contemplated by the Loan Agreement and the Definitive Documentation. Payments hereunder shall be made within thirty (30) days of the Lender's presentation of periodic statements of such reasonable expenses.  Enforcement of the Lender's rights under the Loan Agreement and/or the Definitive Documentation is not subject to this cap. None of such costs and expenses shall be subject to the approval of this Court, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

13. <u>Officers Authorized to Execute Definitive Documentation</u>. Each officer of the Debtors as may be so authorized by the Board of Directors, acting singly, is hereby

authorized to execute and deliver the Definitive Documentation, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

14.     <u>Valid and Binding Nature of DIP Obligations</u>.  Prior to the execution and delivery of the Definitive Documentation, this Order shall constitute and evidence the valid and binding obligations of each of the Debtors, which obligations shall be enforceable against each of the Debtors in accordance with the Loan Agreement and this Order.  From and after the execution and delivery of the Definitive Documentation, such documents shall constitute and evidence the valid and binding obligations for each of the Debtors, which obligations shall be enforceable against each of the Debtors in accordance with the terms thereof and this Order; provided, however, that at all times, unless and until the ATSB Loan Obligations have been indefeasibly paid in cash in full, the DIP Liens shall be junior and subordinate to the prepetition liens and security interests and the Replacement Liens securing the ATSB Loan Obligations.

15.     <u>Interest on DIP Obligations</u>.  Interest on the DIP Obligations under the DIP Facility shall accrue at the rates (including applicable default rates) and shall be paid at the times as provided in the Loan Agreement and the Definitive Documentation.  All DIP Obligations shall become due and payable, without notice or demand, in accordance with the Loan Agreement.  Notwithstanding anything to the contrary in this Order or the Loan Agreement, the Lender may not request and shall not accept, nor shall the Debtors make, any payment to the Lender in contravention of Sections 2.11 or 3.08 of the Loan Agreement.

16.     <u>No Costs or Expenses of Administration</u>.  Except for the Carve-Out (including any fund for the payment thereof), the Chapter 5 Avoidance Fund and the

ATSB Loan Obligations, no costs or expenses of administration, including without limitation, professional fees allowed and payable under Sections 330 and 331 of the Bankruptcy Code that have been or may be incurred in these Cases, and no priority claims with respect to or relating to the Collateral are, or will be, prior to or on a parity with (a) the DIP Obligations, or (b) the DIP Super-Priority Claim.

17.    (a)    Limitation on Applicability of Carve-Out.  The Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party, including the Debtors, any Committee, or any of their respective professionals, in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Lender in connection with the transactions described in the Loan Agreement, the Definitive Documentation, and this Order, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations thereunder or the security interests granted thereby and DIP Liens in respect thereof.

(b)    Ability to Pay Administrative Expenses in Ordinary Course.  So long as no Event of Default shall have occurred and be continuing under the Definitive Documentation, the Debtors shall be permitted to pay administrative expenses of the kind specified in Section 503(b) of the Bankruptcy Code incurred in the ordinary course of business of the Debtors, subject to the limitations set forth in this and any other orders of the Court, as the same may become due and payable.

18.    Survival of Rights and Obligations Herein.  Unless and until the DIP Obligations are unconditionally and indefeasibly repaid in full in cash, the protections afforded to the Lender under the Definitive Documentation and this Order, and any actions

taken pursuant thereto and hereto, and the Carve-Out (including any fund for the payment thereof) (as to pre-conversion or pre-effective date services), shall survive the entry of any order (i) confirming any plan of reorganization in any of the Chapter 11 Cases (and, to the extent not satisfied in full, the DIP Obligations shall not be discharged by entry of any such order, or pursuant to the Bankruptcy Code section 1141(d)(4), each of the Debtors having waived such discharge), (ii) converting any Case to a case under chapter 7 of the Bankruptcy Code, or (iii) dismissing any Case and the terms and provisions of this Order as well as the DIP Super-Priority Claim and DIP Liens granted pursuant to this Order and the Definitive Documents shall continue in full force and effect notwithstanding the entry of any such order, and such DIP Super-Priority Claim and DIP Liens shall maintain their priority as provided by this Order to the maximum extent permitted by law until all DIP Obligations are indefeasibly paid in full and discharged.  This Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in any of the Cases or in the event of the conversion of any Case to a case under chapter 7 of the Bankruptcy Code.

19.     No Modification of Time and Manner of Payment of DIP Obligations.  The time and manner of payment of the DIP Obligations pursuant to the DIP Facility, the DIP Liens and the DIP Super-Priority Claim shall not be altered or impaired by any plan or plans of reorganization which hereafter may be confirmed or by any further order which hereafter may be entered, in each case without the Lender's consent.

20.     Limitation on Exercise of Rights and Remedies.  Upon the occurrence of an Event of Default, the Lender may take any or all of the following actions without further order of or application to the Court:  (i) declare the DIP Obligations to be due and payable; (ii) terminate any further commitment to lend to the Borrower; and (iii) exercise any other

rights and remedies of a secured creditor, provided, however, that the Lender may not exercise any  such rights or remedies against the Debtors or the Collateral in contravention of Section 2.12 of the Loan Agreement.

21.　　(a)　　<u>No Claims for Costs or Expenses of Administration</u>.  Except as represented by the Carve-Out (including any fund for the payment thereof), neither the Debtors, the Committee, any other official committee appointed in these Cases, nor any subsequently appointed trustee for any of the Debtors, shall assert a claim for costs or expenses of the administration of any of these Cases or any future proceeding or case which may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, to be charged against the Collateral or assessed against the Lender pursuant to section 506(c) of the Bankruptcy Code or otherwise.

(b)　　<u>No Marshalling</u>.  Notwithstanding any other term or condition of this Order, the Loan Agreement, the Guaranty, or any other Definitive Documentation, neither the ATSB Lender Parties nor the Lender shall be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to any of the Collateral.

22.　　<u>Waiver of Claims</u>.  Without prejudice to the rights of any other party, including any Committee, the Debtors have waived any and all claims and causes of action against the Lender, and its respective affiliates, directly related to the DIP Facility or the negotiation of the terms thereof.

23.　　<u>Right to Suspend or to Terminate the Making of Loans or Advances</u>.  Nothing included herein shall prejudice, impair, or otherwise affect the Lender's rights during the continuance of a default or an Event of Default to suspend or terminate the making of loans and/or advances under the DIP Facility.

24.     Copies of Documents.  The Debtors shall provide the ATSB Lender Parties with a copy of the Definitive Documentation and of any notices of the occurrence of an Event of Default under the Loan Agreement.

25.     Modification, Vacation or Stay.  If any provision of this Order is hereafter modified, vacated or stayed by subsequent order of this or any other Court for any reason, such modification, vacation, or stay shall not affect the validity of any DIP Obligation incurred pursuant to the Definitive Documentation or this Order and prior to the later of (a) the effective date of such modification, vacation, or stay, or (b) the entry of the order pursuant to which such modification, vacation, or stay was established, and shall not affect the validity, priority, or enforceability of the DIP Liens or the DIP Super-Priority Claim granted by the Debtors to the Lender or authorized herein.  The validity, priority and enforceability of any credit extended or security interest or lien granted or perfected pursuant to the DIP Facility is subject to the protection accorded under section 364(e) of the Bankruptcy Code.

26.     Binding Upon Successors.  The DIP Liens and the DIP Super-Priority Claim granted to the Lender under the Definitive Documentation and this Order, and the priority thereof and any payments pursuant thereto, shall be binding (subject to the terms of this Order) on the Debtors and any successor trustee for the Debtors to the fullest extent permitted by applicable law.

27.     No Waiver of Lender's Rights.  The Lender's failure to seek relief or otherwise exercise its rights and remedies under the Loan Agreement, or the Definitive Documentation or this Order shall not constitute a waiver of any of the Lender's rights hereunder, thereunder, or otherwise.  No delay on the part of the Lender in the exercise of any right or remedy under this Order, the Loan Agreement, or the Definitive

Documentation, shall preclude any other or further exercise of any such right or remedy. None of the rights or remedies of the Lender under this Order shall be deemed to have been suspended or waived by the Lender unless such suspension or waiver is in writing and directed to the Debtors or the Court specifying such suspension or waiver.

28.     Terms of Order Control.  In the event of any inconsistency between the terms and conditions of the Loan Agreement and the provisions of this Order, the provisions of this Order shall govern and control.

29.     Future Debtors Deemed Guarantors.  Any existing or future direct or indirect subsidiary of the Borrower that hereafter becomes a debtor in a case under chapter 11 of the Bankruptcy Code in this Court shall automatically, immediately upon the filing of a petition for relief for such subsidiary, be deemed to be one of the "Guarantors" hereunder in all respects, and all of the terms and provisions of this Order, including, without limitation, those provisions granting security interests in, and Liens on, the Collateral, and the DIP Super-Priority Claim in each of the Debtor's chapter 11 cases, shall immediately be applicable in all respects to such subsidiary and its chapter 11 estate.

30.     No Claims Against ATSB Lender Parties.  Subject to the limitations of Section 2.12(h) of the Loan Agreement, the Lender shall have no claim of any kind, and agrees to assert no such claim, against the ATSB Lender Parties (in their respective capacities as such).

31.     Titles and Headings.  The titles and headings in this Supplemental Order are and shall be without substantive meaning or content of any kind whatsoever.

## FINAL APPROVAL OF AND AUTHORIZATION AS TO
## BORROWING AND SECURITY

32.     With respect to the Loan Agreement, this is an interim order, entered

pursuant to Bankruptcy Rule 4001(c)(2) and Section 364(c) of the Bankruptcy Code,

based upon the Court's finding of immediate and irreparable harm as set forth in

paragraphs E and F above.

33.     Should a party in interest file an objection to the Motion ("Objection") that is

not resolved or withdrawn on or before March 6, 2005, a final hearing on the Motion shall

take place on March 7, 2005 at **1:30** ~~am~~/pm.

34.     If no Objection to the Motion is filed on or before March 6, 2005, or if all

objections which have been filed to the Motion have been withdrawn or resolved, on

March 7, 2005 at 12:00 am, this Order shall automatically become a final order, without

the necessity of further Court approval or a final hearing on the Motion (the "Final Order").

35.     Pursuant to this Order, if and when it becomes a Final Order, each of the

Debtors are further authorized to borrow up to the full amount of the Borrowing Amount

and, with respect to each Guarantor, to guaranty the Borrowing Amount, in each case on

the terms and conditions that are consistent with the Loan Agreement and this Order.

36.     Pursuant to Section 364(e) of the Bankruptcy Code, the reversal or

modification on appeal of this Order, in either its interim or final form, shall not affect the

validity of the debt incurred or the liens granted by the Loan Agreement and this Order.

## AUTHORIZATION TO ENTER INTO JET SERVICE AGREEMENT

37.     With respect to the Jet Service Agreement, this is a Final Order, and the

Debtors are hereby authorized to enter into the Jet Service Agreement and to bind the

estates thereto, subject to the limitations of Section 7.1 (a) of such agreement, on the

extent and limitations to which any claim arising from a breach of such agreement will constitute administrative claims.

38.     Pursuant to Section 363(m) of the Bankruptcy Code, the reversal or modification on appeal of this Order shall not affect the validity of any transaction contemplated by the Jet Service Agreement.

39.     <u>Immediate Enforceability</u>.  This Order shall constitute findings of fact and conclusions of law.  Notwithstanding Bankruptcy Rule 7062, the terms and conditions of this Order and the Final Order shall:  (a) be immediately enforceable pursuant to Bankruptcy Rule 8005; and (b) not be stayed absent (1) an application by a party in interest for such a stay in conformance with such Bankruptcy Rule 8005, and (2) a hearing upon notice to the Debtor and the Lender.

Dated:  Alexandria, Virginia
            _____, 2005

                                    _____
                                    Honorable Stephen S. Mitchell
                                    United States Bankruptcy Judge

WE ASK FOR THIS:

Brian P. Leitch, Esq.
Daniel M. Lewis, Esq.
Michael J. Canning, Esq.

ARNOLD & PORTER LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-1370
(303) 863-1000
     - and -
555 Twelfth Street, NW
Washington, DC 20004-1206
(202) 942-5000
     - and -
399 Park Avenue
New York, New York 10022
(212) 715-1000

-and-

/s/ Lawrence E. Rifken
Lawrence E. Rifken, Esq. (VSB No. 29037)
Douglas M. Foley, Esq. (VSB No. 34364)
David I. Swan, Esq.
McGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102-4215
(703) 712-5000

*Counsel to the Debtors and Debtors-in-Possession*