UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                        )
                                              )
    US AIRWAYS, INC., *et al.*                )    Case No. 04-13819-SSM
                                              )    Chapter 11 (Jointly Administered)
                      Debtors                 )

**MEMORANDUM OPINION**

The issue before the court is the debtor's liability for certain professional fees that were passed on to it as part of the cure payments the debtor was required to make under § 1110 of the Bankruptcy Code in connection with complex aircraft financing arrangements known as Enhanced Equipment Trust Certificates ("EETCs"). The fees in question, which total $554,896, were assessed by EETC participants known as "liquidity providers" and "policy providers" and were paid by the debtor under protest. A hearing was held on June 23, 2005, at which U.S. Bank National Association ("U.S. Bank") – the entity to which the payment was made – and the debtor were each represented by counsel. The liquidity provider (Morgan Stanley Capital Services, Inc.) and the policy provider (MBIA Insurance Corp.) whose professional fees were at issue had not been made parties to the controversy and were not present.[1]

---

[1] However, ABN AMRO Bank, N.V., which is the liquidity provider for the 1998 series EETCs, was present in support of the conditional objection it filed to the cure dispute hearing. Although none of its claimed expenses were directly at issue, it expressed a concern that the court's ruling not set an adverse precedent/

1

Background

US Airways, Inc., is the seventh largest airline in the United States. Together with its parent holding company and three affiliates,[2] it filed a voluntary chapter 11 petition in this court on September 12, 2004, and continues to operate as a debtor in possession.[3]

Over 100 of the debtor's aircraft are financed through complex arrangements known as Enhanced Equipment Trust Certificates. Fundamentally, an EETC is a security

- that relies on the credit of a single corporate issuer,
- that is secured by aircraft as collateral,
- that utilizes a liquidity facility to provide up to 18 months of missed interest payments, and
- that utilizes structural enhancements to provide improved loan-to-value ratios for the more senior levels, or tranches, of debt securities.

Ronald Scheinberg, "Enhanced Equipment Trust Certificates in the Downturn: An Assessment for Banks," 121 Banking L.J. 108, 109 (2003). Some of the aircraft that are the subject of the EETCs are leased to US Airways, while others are owned by US Airways but mortgaged. U.S. Bank is the indenture trustee, pass-through trustee, or subordination agent for six different series of EETCs issued by the debtor.[4] For the purpose of the present discussion, it suffices that US Airways has direct privity of contract only with the indenture trustee. The rights and obligations of the liquidity provider and the policy provider are set

---

[2] The debtors are US Airways Group, Inc., US Airways, Inc., PSA Airlines, Inc., Piedmont Airlines, Inc., and Material Services Co., Inc.

[3] This is the company's second chapter 11 filing in approximately two years. The previous case was filed in August 2002 and resulted in a confirmed plan of reorganization in March 2003. The circumstances of the prior filing have no bearing, however, on the present dispute.

[4] *See* 121 Banking L.J. at 110 for a helpful diagram showing the relationship of the various participants to a typical EETC transaction.

forth in a separate intercreditor agreement to which the providers, the subordination agent, and the pass-through trustee are parties, but the debtor is not.  The liquidity provider, as noted, guarantees up to 18 months of interest payments.  The policy provider (typically an insurance company) guarantees a portion of the principal payments.  Under the intercreditor agreement, the fees and expenses of the liquidity provider and the policy provider are paid first from payments received by the indenture trustee before funds are distributed to the pass-through trustees for distribution to the holders of the certificates.  Legal fees incurred by the liquidity provider and the policy provider are billed to the indenture trustee, who in turn includes them in the payment due from the debtor.

      The present dispute arises because the debtors filed with the court unilateral agreements under § 1110(a) of the Bankruptcy Code agreeing to pay the amounts due on certain aircraft leases and mortgages in order to retain possession of the aircraft.[5]  In the agreements, the debtors stated the amounts they believed necessary to cure defaults.  U.S. Bank filed responses disputing the cure amounts due with respect to 37 Boeing aircraft and 106 Airbus aircraft (95 of which were financed through six series of EETCs).  The debtors paid the full amounts demanded by U.S. Bank under protest in order to prevent certain certificate holders (the Class C certificates) from being shorted, which would have jeopardized important global settlements the debtors has previously reached with two holders of those certificates, Airbus Industries and General Electric Commercial Aviation

---

[5] Under § 1110 of the Bankruptcy Code, the automatic stay with respect to enforcement of a security interest or lease in an aircraft terminates 60 days after a chapter 11 petition is filed unless, prior to that time, the trustee or debtor in possession "agrees to perform all obligations under of the debtor" under the security agreement or lease and cures any default.

Services.  The total amount paid by the debtor under protest was approximately $2.3 million.  By the time of the hearing, however, the dispute had been narrowed to $87,345.49 in expenses that had been billed by Morgan Stanley as the liquidity provider for the 2000-3 series of EETCs, and $467,551.14 in expenses that had been billed by MBIA Insurance Corporation as the policy provider for the 2001-1 series of EETCs.[6]  The bulk of the disputed expenses consist of legal fees charged by Morgan Stanley's law firm, Cadwalader, Wickersham & Taft, LLP, and by MBIA's law firm, Latham & Watkins, LLP, and its financial adviser, Rothschild.  The Cadwalader invoices were attached by Morgan Stanley to its payment request but for each month contain only the bare statement "For Professional Services Rendered," with no description of the work performed, hours expended, or hourly rate.  MBIA has not provided copies of Latham & Watkins's invoices but did provide a summary showing the hours billed and billing rate of each attorney and paralegal but no description of the work performed.  The summary also shows the monthly amount billed by Rothschild, but with no description of the work performed.

Discussion

With respect to the payments made under protest, the debtors seek a determination that because Morgan Stanley and MBIA have failed to demonstrate the reasonableness of the legal fees passed through to the debtors, such fees should be disallowed, and U.S. Bank should be required to refund them.  More broadly, the debtors seek a ruling that the legal

---

[6] Although the debtor's summary chart (Exhibit C) showing the disputed amounts appears to identify the MBIA expense as pertaining only to the 2001-1 series EETCs, the summary prepared by MBIA (Exhibit J-4) appears to allocate the Latham & Watkins and Rothschild fees across four series of EETCs (2000-1, 2000-2, 2000-3, and 2001-1)

fees of the EETC liquidity providers and policy providers are subject to review by the court and a mechanism by which such fees can be challenged prior to payment.

A.

That professional fees of creditors paid from a bankruptcy estate must be reasonable is a principle so firmly fixed as to hardly require citation of authority. § 506(b), Bankruptcy Code (oversecured creditor may recover "reasonable" fees provided for under agreement); *In re Valley Historic L.P.*, 307 B.R., 508 (Bankr. E.D. Va. 2003) (oversecured creditor's request for fees must be evaluated for reasonableness); *In re Continental Airlines, Inc.*, 138 B.R. 439, 442 (Bankr. D. Del. 1992) ("Under section 1110 of the Bankruptcy Code, amounts required to be paid by a debtor to lessors of aircraft to cure prepetition defaults under the leases include reasonable attorney's fees.") (dicta), *rev'd on other grounds*, 150 B.R. 334 (D. Del. 1993).[7] U.S. Bank does not contend otherwise.[8] Its position, rather, is that as subordination agent it has no discretion with respect to distribution of payments it receives from the debtor and no duty or power to police the legal fees of the liquidity provider or policy provider or

---

[7] The debtor cites the unreported decision in *In re Midway Airlines, Inc.*, 1991 WL 277767 (Bankr. N.D. Ill., Dec. 17, 1991) as additional authority that legal expenses included in § 1110 cure payments must be reasonable. In that case, however, the fees reviewed by the court were not cure payments under the original leases but rather arose under standstill and forebearance agreements that the debtor airline and the aircraft lessors had entered into after the debtor failed to cure existing payment defaults. It was the provision of the standstill agreement allowing reimbursement to the lessors of "approved" attorney's fees that provided the immediate underpinning for the court's review of the challenged fees. *Id*. at *6.

[8] *See*, e.g., § 3.7(i) of the Intercreditor Agreement for the series 2001-1 EETCs (Exhibit F at p. 52), which gives MBIA as policy provider a right to reimbursement for, among other expenses, "any and all charges, fees, costs and expenses and disbursements that the Policy Provider may *reasonably* pay or incur, including *reasonable* attorneys' and accountants' fees and expenses ... in connection with the enforcement, defense or preservation of any rights in respect of any of the Operative Agreements[.]" (emphasis added).

5

go behind their certifications as to the amount of their expenses.[9]  This position was echoed by ABN AMRO (even though none of its expenses were at issue in the hearing).  Stripped to its essentials, ABN AMRO's argument – which presumably would have mirrored Morgan Stanley's or MBIA's, had they been present – is that because the debtor is not a party to the intercreditor agreement between ABN AMRO and U.S. Bank, the debtor has no right to challenge or adjust the amount of legal fees U.S. Bank is required to pay ABN AMRO under the terms of the agreement.

The problem, of course, is that if the court were to accept the arguments both of U.S. Bank and pf ABN AMRO (as surrogate for Morgan Stanley and MBIA), the legal fees imposed on the bankruptcy estate would be rendered effectively unreviewable, no matter how unreasonable they were.  The court, needless to say, is not prepared to go that far.  The court does agree with U.S. Bank, however, that U.S. Bank is not the appropriate party from which to seek a refund.  As the court reads the applicable documents, U.S. Bank is simply a conduit of the contracting parties for distributing the payments made by the debtor and has no discretion to refuse payment of the expenses certified to it by the liquidity and policy providers prior to making payment to the pass-through trustees.  For that reason, the court declines to order U.S. Bank to refund the challenged fees.

---

[9] *See, e.g.,* § 3.1(d) of the Intercreditor Agreement for the Series 2001-1 EETCs (Exhibit F at p. 34), "[T]he Subordination Agent shall be fully protected in relying on any of the information set forth in a Written Notice provided by any Trustee, any Liquidity Provider or the Policy Provider ... and shall have no independent obligation to verify, calculate or recalculate any amount set forth in any Written Notice[.]"

B.

This conclusion does not, however, leave the debtor without a remedy. Notwithstanding the lack of contractual privity between the debtor and the liquidity and policy providers, there is no question that the legal and other professional fees incurred by the providers were never intended or expected to be borne by them but rather by the debtor. That reality is sufficient, in the court's view, to give the debtor standing to challenge them. The difficulty here, however, is that the providers have not been made parties to the controversy. Without their joinder or, alternatively (and perhaps more appropriately), the commencement of a separate proceeding against them to determine the reasonableness of the fees, the court cannot, consistent with due process, make a ruling that would disallow such fees or require their disgorgement. Accordingly, although the court declines at this time to grant the relief sought by the debtors, such ruling is without prejudice to the debtor's right to examine the liquidity and policy providers and their professionals under Rule 2004 to determine if the fees charged were reasonable and, if not, to bring an action for the recovery of amounts collected in excess of what was reasonable.

A separate order will be entered consistent with this opinion.

Date: _____         _____
                                     Stephen S. Mitchell
Alexandria, Virginia                 United States Bankruptcy Judge

Copies to:

Brian P. Leitch, Esquire
Arnold & Porter LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Counsel for the debtor in possession

Lawrence E. Rifken, Esquire
McGuireWoods LLP
1750 Tysons Blvd., Suite 1800
McLean, VA 22102-4215
Local counsel for the debtor in possession

Malcolm Mitchell, Esquire
Vorys, Sater, Seymour & Pease, L.L.P.
277 South Washington Street, Suite 310
Alexandria, VA 22314
Local counsel for the Official Committee of Unsecured Creditors

Julie A. Manning, Esquire
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT  06103-1919
Counsel for U.S. Bank National Association

Stephen E. Leach, Esquire
Leach Travell, P.C.
1921 Gallows Road, Suite 425
Vienna, VA 22182
Local Counsel for U.S. Bank National Association

Craig E. Reimer, Esquire
Mayer, Brown, Rowe & Maw, LLP
71 South Wacker Drive
Chicago, IL 60606
Counsel for ABN AMRO Bank, N.V.

Bradford F. Englander, Esquire
Linowes and Blocher, LLP
1010 Wayne Ave., Tenth Floor
Silver Spring, MD 20910
Local counsel for ABN AMRO Bank, N.V.

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA 22314