UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                   )
                                         )
    US AIRWAYS, INC., *et al.*              )    Case No. 04-13819-SSM
                                         )    Chapter 11 (Jointly Administered)
               Debtors         )

**MEMORANDUM OPINION**

Ricardo and Stella Partridge have moved the court for leave to file a late proof of claim. A hearing on the motion was held on October 20, 2005, with Stella Partridge appearing by telephone.[1] At the conclusion of the hearing, the court took the motion under advisement. For the reasons stated, the motion will be denied.

Background

Ricardo Partridge is a furloughed employee of US Airways, Inc. ("US Airways"). Stella Partridge is his wife. US Airways, together with its parent holding company and several affiliates, filed a petition for reorganization under chapter 11 of the Bankruptcy Code in this court on September 12, 2004. This was the company's second chapter 11 filing. It had previously filed a chapter 11 petition in this court on August 11, 2002. A plan was confirmed in the first case on March 18, 2003. Among other provisions, that plan canceled the existing shares of stock in the parent holding company, US Airways Group, Inc. ("US Airways Group"). Mr. and Ms. Partridge filed a timely proof of claim in the first case in the

---

[1] In ruling on the motion, the court has also considered the affidavit filed by Ms. Partridge on November 16, 2005, supplementing the representations she made at the October 20th hearing.

1

amount of $18,367.26 based on the loss in value of US Airways Group stock held in Mr. Partridge's 401(k) plan. That claim was disallowed by order entered March 17, 2004.[2] No appeal was taken from the order disallowing the claim.

In the present case, the court entered an order on September 15, 2004, establishing a claims bar date of February 3, 2005, for creditors other than governmental units. Notice of the bar date was included in the notice of commencement of the case as well as in a separate notice of claims bar date. The bar date order required that actual notice by mail be provided to all persons known to have claims against the debtor. Additionally, the court directed the debtors to give notice to all unknown creditors by publication in *The New York Times* (national edition), *The Wall Street Journal* (national and European editions), and *USA Today* (worldwide).[3] There is no dispute that the notice of claims bar date was not mailed to Mr. and Ms. Partridge.[4] The debtor asserts, however, that the notice of the commencement of the case —which sets forth the bar date, although not with the same prominence as in the bar

---

[2] The claim was disallowed not because Mr. Partridge had not suffered a loss, but because under § 510(b) of the Bankruptcy Code, a claim for damages arising from the purchase of common stock is subordinate to all claims that are senior to such stock. Where a reorganized debtor does not have sufficient value to pay general unsecured claims in full, no distribution can be made to holders of the debtor's common stock. § 1129(b)(2)(B), Bankruptcy Code. In the first US Airways case, general unsecured claims were paid in newly issued stock having an estimated value at the time of confirmation of less than five cents on the dollar, and no distribution was made to holders of common stock. Because the Partridges' claim was based on loss in value of the shares of stock, it was not entitled to a distribution under the plan.

[3] The order required the debtors to publish the notices on or about November 5, 2004. The debtor provided the court with affidavits from the respective publications verifying that the notices had been published, along with photocopies of the actual notices as they appeared.

[4] The debtor explains that the notice of commencement of case was mailed to a broader universe of parties—including, apparently, creditors whose claims were disallowed in the first case—than the notice of claims bar date.

date notice —was mailed to Mr. and Ms. Partridge. For their part, they deny receiving a copy of the case commencement notice or seeing the bar dates in any publication. Indeed, they claim they were unaware that US Airways had filed a second chapter 11 case until August of this year. By that time, the claims bar date had long passed.

The Partridges did not attach to their motion a copy of the claim they seek leave to file. However, based on Ms. Partridge's statements at the hearing, the claim appears to have two components. The first is a securities fraud claim related to US Airways Group stock the Partridges had purchased at the company's urging prior to the first chapter 11 case.[5] That stock, as noted, was cancelled by the confirmed plan in the first chapter 11 case. The second component of the claim consists of Mr. Partridge's lost wages since he was furloughed. The apparent theory of the claim is that the cancellation of the stock and the furlough were the result, not of external economic circumstances over which the company had no control, but rather of gross mismanagement that drove a fundamentally viable company into insolvency.

<u>Discussion</u>

Except for certain scheduled claims that are "deemed" filed, a creditor must file a proof of claim by the claims bar date in order to receive a distribution in a chapter 11 case. Fed.R.Bankr.P. 3002(c). This is subject to two qualifications. First, the creditor must have been provided with constitutionally adequate notice of the claims bar date. *City of New York v. N.Y, New Haven & Hartford R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). And second, even when notice is adequate, the court may allow a late proof of claim upon a

---

[5] Although Ms. Partridge stated at the hearing that she and her husband were "extorted" by the company's prior management to purchase the stock, the court assumes she meant "exhorted."

3

proper showing of excusable neglect. *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The court will address each of these issues in turn.

I.

A.

An important function of the bankruptcy law is to "secure within a limited period the prompt and effectual administration and settlement of the debtor's estate." *Chemetron Corp. v. Jones,* 72 F.3d 341, 346 (3d Cir. 1995) (citing *Katchen v. Landy,* 382 U.S. 323, 328, 86 S.Ct. 467 472, 15 L.Ed.2d 391 (1996). In a chapter 11 case, creditors whose claims are listed in the schedules of liability need not file a proof of claim unless the claims are scheduled as disputed, contingent, or unliquidated. Fed.R.Bankr.P. 3003(b)(1). All other creditors, however, must file a proof of claim prior to a bar date established by the bankruptcy court. Fed.R.Bankr.P. 3003(c)(2).[6] After the passage of the bar date, a claimant cannot participate in the reorganization unless he or she establishes sufficient grounds for the failure to file a proof of claim. *Chemetron,* 72 F.3d at 346 (citing *In re Best Products Co.,* 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992)).

Upon confirmation of a chapter 11 plan, the debtor is discharged from any debt that arose prior to the confirmation date except as otherwise provided by § 1141(d) of the Bankruptcy Code, the plan, or the order confirming the plan. *In re AM Intern,* 142 B.R. 252

---

[6] In this district, unless the court sets some other date on motion of a party in interest, the claims bar date for non-governmental creditors is set by local rule at 90 days after the date first scheduled for the meeting of creditors. LBR 3003-1(A). The date set for the meeting of creditors in this case was November 5, 2004. The claims bar date of February 3, 2005, was the 90th day after that date and was therefore consistent with the local rules.

(Bankr. N.D. Ill. 1992). This is true whether or not a proof of claim is filed and whether or not the claim is allowed. § 1141(d)(1)(A)(i) - (ii), Bankruptcy Code. For that reason, fundamental due process requires that creditors be given notice of the commencement of the case and of the claims bar date. As the Supreme Court has explained in another context:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (internal citations omitted).

In this connection, the Bankruptcy Code requires that "[t]here shall be given such notice as is appropriate . . . of an order for relief in a case under this title." § 342, Bankruptcy Code. This section does not specify to whom notice must be given. The legislative history, however, provides that "[t]he Rules will prescribe to whom the notice should be sent, and in what manner notice will be given." H.R.Rep. No. 95-595, 95th Cong, 1st Sess 331–32 (1977). The legislative history further explains that "due process will certainly require notice to all creditors and equity security holders." The Federal Rules of Bankruptcy Procedure require that "the clerk, or some other person as the court may direct, shall give . . . *all creditors* . . . notice by mail of: (1) the order for relief; ... [and] (3) the time allowed for filing claims . . ." Fed.R.Bankr.P. 2002(f)(1) & (3) (emphasis added). The issue in this case, therefore, as framed by *Mullane,* is whether US Airways provided the Partridges with notice that was reasonably calculated under the circumstances to inform them of the bar date

when it mailed them the notice of the commencement of the case and published the bar date in three newspapers having a national circulation. The answer depends on whether the Partridges were "known" creditors of US Airways.

In the seminal case dealing with the issue of notice in the bankruptcy context, *City of New York v. New York, New Haven & Hartford R.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), the district court issued an order requiring the filing of all claims before the bar date. The trustee sent notice of the order by mail to certain creditors, which did not include the City of New York, and published notice of the bar date in five daily newspapers, including the Wall Street Journal. Although the City knew about the reorganization proceeding, it failed to file its lien claims before the bar date. The Supreme Court held that the City did not receive reasonable notice since the debtor railroad and the trustee knew about the City's liens and failed to provide it with actual mail notice of the bar date. 344 U.S. at 296–97, 73 S.Ct. at 301.

Lower courts have consistently followed this precedent. For example in *In re Kendavis Holding Co.,* 249 F.3d 383 (5th Cir. 2001), Kendavis provided an employee a letter stating its intention to terminate a pension plan, and assuring him that his benefits under the plan would not be affected. The employee acknowledged that he knew about the bankruptcy through local newspaper articles. Years later when he attempted to collect benefits under the plan, he learned that Kendavis had terminated the plan, and that his entitlement under the plan was likewise terminated. The court found that the employee's pension plan termination claim was not discharged, even though he had actual knowledge of the case, because he did not receive formal notice of the case or that his rights might be affected. *Id. at* 388.

In *In re Harbor Tank Storage Co., Inc.,* 385 F.2d 111 (3d Cir. 1967), Murray Oil Products Co. appealed the decision of the court denying its petition to file a claim against Harbor Tank after its plan of reorganization had been confirmed. Although Murray Oil knew about the reorganization proceedings and the trustee for Harbor Tank knew about its claim, the trustee did not provide notice of the bar date by mail. The court held that "[t]he rejection of Murray Oil's petition in the face of the inexplicable failure of the trustee to give Murray Oil any of the various notices . . . — despite the trustee's actual knowledge of Murray Oil's unsatisfied meritorious claim — constitutes a denial of due process." The court noted:

> The reorganization process is dependent on the proper notification to creditors and other interested parties of all important steps in the proceeding so that they may take such steps as necessary to safeguard their interest. Although notice by publication may be deemed to satisfy the requirements [of the Code] in some situations, certainly such notice is insufficient where, as here, the trustee knows both the existence and address of a creditor. And the fact that a creditor knows of the initiation of reorganization proceedings does not of itself place a burden on the creditor to file an appearance or claim in the proceeding before receiving notice to do so: a creditor has every right to assume that he will be sent all the notices to which he is entitled . . .

*Id.* at 115.

*Reliable Electric Co., Inc., v. Olson Construction Co.,* 726 F.2d 620 (10th Cir. 1984), also involved a known creditor who had knowledge of the bankruptcy proceedings, but never received notice of any of the proceedings. The court held that

> the discharge of a claim without reasonable notice of the confirmation hearings is violative of the fifth amendment of the United States Constitution. In our view, this holding is supported by the Supreme Court's decisions in *Mullane*.

*Id.* at 623. The court noted that "the reorganization process depends upon all creditors and interested parties being properly notified of all vital steps in the proceeding so they may have the opportunity to protect their interests." *Id.*

A different result was reached, however, in *Brooks Fashion Stores Inc., v. Michigan Employment Security Comm.(In re Brooks Fashion Stores, Inc.),* 124 B.R. 436 (Bankr.S.D.N.Y 1991). In that case, the Michigan Employment Security Commission ("MESC") filed a proof of claim one year after the bar date in the debtor's reorganization. MESC argued that its claim should be permitted because as a taxing authority it was entitled to actual notice of the bar date. The court rejected this argument, finding that MESC was an unknown creditor of the debtor, and was not required to have actual notice of the bar date. *Id.* at 444.

In the present case, there is a dispute as to whether the Partridges were given mail notice of the commencement of the bankruptcy case. It is undisputed, however, that the Partridges were never mailed the separate notice of the claims bar date.[7] If the Partridges were known creditors of US Airways, this would be violative of their due process rights because all known creditors are entitled to notice "of all important steps in the [bankruptcy] proceeding." *In re Harbor Tank Storage Co., Inc.,* 385 F.2d at 115. This would include the additional notice of bar date. However, based on the facts of this case, the Partridges were not "known" creditors of US Airways.

---

[7] Rule 9006(e), Federal Rules of Bankruptcy Procedure, states that notice by mail is complete on mailing. Furthermore, correctly mailed notice also triggers a parallel common law presumption that proper notice was given. *Greyhound Lines, Inc., v. Rogers (In re Eagle Bus Mfg., Inc.),* 62 F.3d 730 (5th Cir. 1995). Accordingly, there is a rebuttable presumption that the Partridges were given actual notice of the commencement of the case. While their denial of having received the notice may raise a factual issue as to whether it was actually sent, the court need not reach the issue in light of the court's conclusion that the Partridges were not "known" creditors to whom actual notice had to be sent.

The Partridges argue that because they were "stockholders/employees" and had filed a proof of claim in the first US Airways bankruptcy case — and indeed appeared and testified at one hearing in the case — US Airways was on notice that they had a claim in the subsequent case, thereby making them "known" creditors entitled to notice by mail of all proceedings in the second case. This argument cannot stand. Although the Partridges did file a timely proof of claim in the first bankruptcy case, that claim was disallowed. The order disallowing the claim, coupled with confirmation of the plan, effectively extinguished the claim. Simply put, a creditor whose claim has previously been discharged no longer has a claim. In the absence of some affirmative conduct by the creditor subsequent to discharge evidencing the creditor's belief that the claim is still alive, the debtor would have no reasonable ground to believe the claim needed to be scheduled in a subsequent case (although the court is aware that some debtors, out of an abundance of caution, will include previously discharged claims on their schedules but list them as disputed).

With respect to Mr. Partridge's status as a furloughed employee, the mere fact that an employee has been laid off would not, in and of itself, require a debtor to assume the employee has a claim, at least in the absence of some pending or threatened administrative or court proceeding challenging the layoff. The Partridges allege that Mr. Partridge's furlough and subsequent lost wages resulted from criminal mismanagement of the corporation by its officers and directors, and they apparently believe there is some cause of action available to them to recover damages from the company for such mismanagement.[8] To say that such a cause of action is novel and untested would be an understatement. In any event, because no such cause of

---

[8] Whether such a cause of action would exist against the officers and directors themselves is an issue not before the court, since the claim the Partridges seek to assert is against the company.

action had previously been asserted, the debtor was under no obligation to treat every discharged or furloughed employee as a potential creditor on the off chance that the employee might assert such a claim. Put another way, a debtor is not constitutionally required to broadly speculate as to the identity and theory of recovery of each conceivable or possible creditor. *See Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Even assuming, therefore, that US Airways could have anticipated the remote possibility of a claim by the Partridges, US Airways was not required to give notice by mail to those creditors with merely conceivable or speculative claims. *Chemetron Corp. v. Jones,* 72 F.3d 341 (3d Cir. 1995) (describing unknown creditors as those whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]"); *Brooks Fashion Stores, Inc. v. Michigan Employment Security Commission,* 124 B.R. at 445 (citing *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co., et. al),* 125 B.R. 650 (M.D. Fla. 1991).

B.

Upon finding that the Partridges were not "known" creditors, the court has little difficulty finding that the notice by publication provided by US Airways was sufficient. The Supreme Court has acknowledged that "[n]otice by publication is a poor and sometimes a hopeless substitute for actual service of notice." *New York,* 344 U.S. at 296, 73 S.Ct. at 301. The Court has nevertheless held that publication notice for creditors who are not reasonably ascertainable satisfies due process concerns. *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988); *New York,* 344 U.S. at 296, 73 S.Ct. At 301. All that is required is that such notice be "reasonably calculated, under the circumstances,

to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. The Fourth Circuit has observed that this ruling is consistent with the policy goals of efficiency in the bankruptcy context:

> In bankruptcy, the court has an obligation not only to the potential claimants, but also to existing claimants and the petitioner's stockholders. The Court must balance the needs of notification of potential claimants with the interests of of existing creditors and claimants. A bankrupt estate's resources are always limited and the bankruptcy court must use discretion in balancing these interests when deciding how much to spend on notification.

*Vancouver Women's Health Collective Soc. v. A.H. Robins Co. (In re A.H. Robins Co.),* 820 F.2d 1359, 1364 (4th Cir. 1987).

"It is impracticable . . . to expect a debtor to publish notice in every newspaper a possible unknown creditor may read." *In re Best Products Co., Inc.,* 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992). Publication in national newspapers is sufficient, especially given the nationwide nature of US Airways' business. *See, e.g., Brown v. Seaman Furniture Co.,* 171 B.R. 26 (Bankr. E.D.Pa. 1994) (finding that publication in *The New York Times* was sufficient notice to claimant in Pennsylvania); *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 112 B.R. 920 (Bankr. N.D.Ill. 1990) (holding publication of notice in *The Wall Street Journal* was adequate under the bankruptcy law); *Wright v. Placid Oil Co.,* 107 B.R. 104 (Bankr. N.D.Tex. 1989) (holding publication in *The Wall Street Journal* sufficient notice to unknown creditor located in Louisiana).

In the present case, the debtors published notice of the bar date in *The Wall Street Journal*, *The New York Times*, and *USA Today*. This court finds that such notice was reasonably

11

calculated under the circumstances to apprise unknown creditors such as the Partridges of the existence of the applicable bar date and afford them an opportunity to present their claims.

II.

Even when notice satisfies constitutional requirements, a creditor who does not receive actual notice—or who receives it but for some reason does not timely act upon it—may seek leave to file a late claim based on "excusable neglect." As noted above, the time for filing claims in a chapter 11 case is set by the court. Fed.R.Bankr.P. 3003(c)(3); *see In re Best Products Co.,* 140 B.R. at 359 (characterizing the bar date as a court-imposed statute of limitations). However, under Federal Rule of Bankruptcy Procedure 9006(b)(1), "if a party moves for permission to act after having missed a deadline, the court 'may at any time in its discretion ... permit the act to be done where the failure to act was the result of excusable neglect.'" *Pioneer Investment Services Co. v. Brunswick Associates, L.P.*, 507 U.S. 380, 399, 113 S.Ct. 1489, 1500, 123 L.Ed.2d 74 (1993).[9]

In *Pioneer,* the Supreme Court found that "by empowering the court to accept late filings 'where the failure to act was the result of excusable neglect,' Congress plainly contemplated that the court would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances

---

[9] Several courts have noted that it is unsettled whether "excusable neglect" is a viable basis for filing a late proof of claim when the claimant is an "unknown" creditor and constitutionally only entitled to publication notice. *See, e.g., Chemetron Corp. v. Jones,* 72 F.3d 341, 349 n.3 (3d Cir. 1995) (citing *Trump Taj Mahal Assocs v. O'Hara (In re Trump Taj Mahal Assocs.).,* 1993 WL 534494 at *5 n.7 (D.N.J. Dec. 13, 1993)). This court, like the court in *Chemetron,* looks to the plain language of Bankruptcy Rule 9006(b), which provides that a bankruptcy court may permit a late filing where excusable neglect is shown, making no distinction between "known" and "unknown" creditors. *Id.* Accordingly, the Partridges are not precluded from relying on "excusable neglect" as a basis for extension of time to file a proof of claim.

beyond the party's control." *Pioneer,* 507 U.S. at 389, 113 S.Ct. at 1495.  The determination of what constitutes excusable neglect is largely an equitable one, requiring courts to take into account all relevant circumstances surrounding a party's failure to file a proof of claim. *Pioneer,* 507 U.S. at 394–95, 113 S.Ct. at 1498.  The factors that must be weighed include: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant and; (4) whether the movant acted in good faith.  *Id.*  The burden of proving "excusable neglect" is on the creditor seeking to extend the bar date.  *In re Nutri*Bevco,* 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990).  Additionally, it has been stated that "'excusable neglect' is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. DuPont de Nemours & Co.,* 76 F.3d 530, 534 (4th Cir. 1996).

  The court first considers the issue of prejudice.  The establishment and enforcement of a bar date for filing claims "furthers the policy of finality designed to protect the interests of a debtor and his diligent creditors and the expeditious administration of the bankruptcy case." *In re Peters,* 90 B.R. 588, 597 (Bankr. N.D.N.Y. 1988).  Furthermore, "to allow the debtor to be continually pursued by his creditors ad infinitum . . . would be to sanction a form of slow torture contrary to the spirit and purposes of the bankruptcy laws." *Id.* (quoting *Maine Bonding & Casualty Co. v. Grant (In re Grant),* 45 B.R. 262, 264 (Bankr.D.Me. 1984)).

  In the instant case, the debtor would be prejudiced by allowing the Partridges to assert their claim six months after the bar date had passed, particularly in a case as large as

this.[10]  As noted above, US Airways provided mailed notice to all known creditors and notice by publication to all unknown claimants of the applicable bar date.  Following passage of the bar date, the debtor should reasonably be able to assume that all claimants needing to be dealt with in the plan have come forward to vindicate their rights, thereby allowing the debtor to calculate its potential liabilities for purposes of effectuating its reorganization.  If the court were to allow the Partridges to file a late claim solely because they were unaware of the bankruptcy filing, it is difficult to see on what basis the court could deny the same relief to dozens or perhaps hundreds of creditors who might now come forward and assert a previously unknown claim.  Such a policy

> would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice.  Hence, notice of a bar date by publication would be rendered a useless means of establishing a date by which all claims must be filed or forever barred.

*In re Best Products Co., Inc.,* 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992).

The court must also consider the length of the delay and its potential impact on the bankruptcy proceedings.  The Partridges' motion to allow the late filing of a claim was filed on September 7, 2005, nearly seven months after the bar date (although only approximately a month after the Partridges say they became aware that US Airways had filed a second chapter 11 case).  In *Pioneer,* by contrast, the delay was only twenty days.  The length of the delay in this case is significant and weighs against the Partridges.  *Compare In re Quartercall Communications,* 1996 WL 910910 (Bankr. E.D.Va. 1996) (allowing late claim to be filed where creditor acted six days after bar date) and *Matter of Clear Corp.,* 111

---

[10]  There were a total of 6,171 claims filed in the present case in the aggregate amount of $40.5 billion.

B.R. 20 (Bankr. D.P.R. 1990) (allowing late-filed claim when creditor filed seventeen days late) *with Trump Taj Mahal Assoc. v. Alibraham,* 156 B.R. 928 (Bankr. D.N.J. 1993) (disallowing claim after creditor failed to file a proof of claim one year after the commencement of the bankruptcy case). Clearly, the longer the delay, the greater the potential impact on the reorganization proceedings. As the court in *Trump Taj Mahal Associates* observed:

> The bar date in a Chapter 11 reorganization performs an important purpose; it not only allows the trustee or debtor-in-possession to estimate the debtor's potential liabilities, it is also essential in formulating a viable reorganization plan. Without a final claims deadline, participants in the reorganization process would be hindered by undue caution in their negotiations and in voting on the plan, and . . . the debtors carrying out the provisions of the plan.

156 B.R. at 938 (citing *In re Arrow Air, Inc.* 75 B.R. 375, 378 (Bankr.S.D. Fla. 1987). These are important considerations given that judicial resources must be expended in monitoring the reorganization process, and allowance of claims filed many months after the passage of the bar date would frustrate the efforts of both the participants and the court. Accordingly, allowing the filing of claims at this late date, nearly seven months after the passage of the bar date, "would undermine the stability of the confirmation process." *Id.*

With respect to the reason for the delay, the court is astounded, to say the least, that a furloughed employee of a major airline would not be aware of the company's chapter 11 filing. The second filing, like the first, was an event that was widely reported in the news media, and it would have been a natural topic of discussion, not only among active employees, but also among furloughed employees. It very well may be that the Partridges, as Ms. Partridge represents, were so stressed simply keeping body and soul together after Mr. Partridge was laid off that they did not have time to watch television or read

newspapers. Nevertheless, the court is unable to find that failure to keep up with the news is a reasonable excuse for the lengthy delay in seeking to file a claim in this case. With regard, finally, to the factor of good faith, US Airways does not argue that the Partridges acted in bad faith, and the record is devoid of anything suggesting that the Partridges, for example, delayed filing their claim for strategic reasons. Be that as it may, the other factor — especially the length of the delay and its potential impact on the reorganization proceedings — weigh heavily against a finding of excusable neglect.

This is not to say that the court is without sympathy for the economic circumstances in which the Partridges find themselves. In an affidavit filed by Ms. Partridge in support of her motion, she represents that both she and her husband are working 14 hour days. Unquestionably, the level of emotional stress and physical exhaustion must be high. Nevertheless, the issue is not whether the Partridges have been adversely affected. Many other creditors who never filed claims or who filed claims late have presumably also been adversely affected. But a large and complicated reorganization case such as this would be subject to constant disruption — to the considerable prejudice of creditors who filed timely proofs of claim — if the court were to allow claims to be filed after the bar date except for the most compelling circumstances. Those circumstances simply are not present here.

III.

One additional matter requires only brief discussion. The Partridges also request that the Court impose sanctions upon Sarah Boehm, Esquire, one of the debtor's attorneys, for failure to provide them with a copy of the administrative procedures order that was entered in this case on September 15, 2004. Among other things, that order required parties filing a request under

Rule 2002, Federal Rules of Bankruptcy Procedure, for notices in the case[11] to provide an email address to which notices could be sent.  The order further provided that if a request for notices failed to include an email address, the debtors were to provide the party with a copy of the order and to advise the party that it would not be added to the Rule 2002 service list unless an email address was provided or unless the party made a written request showing good cause for exemption from the requirement.  It is not clear from the record on whom the order was to be served — that is, on all scheduled creditors or only on parties who had already entered an appearance in the case.  In any event, the Partridges were neither — that is, they were not scheduled creditors, nor had they entered an appearance in the case.  When they did eventually file a notice of appearance (without an email address) in early August 2005, Ms. Boehm promptly mailed them a copy of the administrative order and advised them of the email address requirement. Why her failure to send them a copy earlier, when she was under no duty to do so, should be deemed either censurable or sanctionable is a mystery to the court.[12]  In any event, the motion for sanctions will be denied.

---

[11]  Rule 2002, Federal Rules of Bankruptcy Procedure, provides in relevant part:

> (g) Addressing Notices.
>      (1)  Notices required to be mailed under Rule 2002 to a creditor, indenture trustee, or equity security holder shall be addressed *as such entity or an authorized agent has directed in its last request filed in the particular case*.

Fed.R.Bankr.P. 2002(g)(1) (emphasis added).

[12]  The Partridges apparently believe they were not sent notices in the case (including the notice of claims bar date) because they had not supplied the debtor with an email address.  That is simply not what Ms. Boehm's letter says.  The Partridges were not sent notices earlier in the case because they were not known creditors of the debtor.  All Ms. Boehm's letter states is that for them to be added to the notice list based on their August 2005 request, they would have to supply an email address or request and receive an exemption.

## Conclusion

Based on the facts of this case, the court finds that US Airways provided the claimants with constitutionally sufficient notice of the bar dates. The court also finds that the Partridges have failed to demonstrate that they should be allowed to file a late claim based on excusable neglect. A separate order will be entered consistent with this opinion denying the motion to file a late proof of claim and denying the motion for sanctions.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge


Copies to:

Ricardo Partridge
Stella Partridge
P.O. Box 4476
Clearwater, FL  33758
Movants *pro se*

Lawrence E. Rifken, Esquire
McGuireWoods LLP
1750 Tysons Blvd., Suite 1800
McLean, VA   22102-4215
Local counsel for the reorganized debtors

Malcolm Mitchell, Esquire
Vorys, Sater, Seymour & Pease, L.L.P.
277 South Washington Street, Suite 310
Alexandria, VA  22314
Local counsel for the Official Committee of Unsecured Creditors

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314