UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                          )
                                                )
        US AIRWAYS, INC., *et al.*              )        Case No. 04-13819-SSM
                                                )        Chapter 11 (Jointly Administered)
                        Debtors                 )


**MEMORANDUM OPINION AND ORDER
DISALLOWING CLAIMS NO. 5207 AND 5208
FILED BY TIMOTHY C. ALEXANDER**


Before the court is the objection of Timothy C. Alexander to the motion of the

reorganized debtors for an order disallowing late-filed claims, including two that Mr.

Alexander filed in the total amount of approximately $9.7 million.  A hearing was held on

December 15, 2005, at which Mr. Alexander participated by telephone and represented

himself.  By separate order, the court granted the debtors' motion with respect to most of the

claims but took the matter of Mr. Alexander's claim under advisement.  After reviewing the

arguments of the parties, the court concludes that the debtor is entitled to an order

disallowing Mr. Alexander's claims on the ground that they were filed after the claims bar

date.

<u>Background</u>

Mr. Alexander was employed for several years as a pilot by Piedmont Airlines, Inc.

("Piedmont").  On September 12, 2004, Piedmont, together with its parent holding company,

US Airways Group, Inc., and three affiliates (including the lead debtor, US Airways, Inc.),

filed voluntary petitions in this court for reorganization under chapter 11 of the Bankruptcy

1

Code.  The cases were jointly administered.  The court entered an order on September 15,

2004, establishing a claims bar date of February 3, 2005, for creditors other than

governmental units.  Notice of the bar date was included in the notice of commencement of

the case as well as in a separate notice of claims bar date.  The bar date order required that

actual notice by mail be provided to all persons known to have claims against the debtor.

Additionally, the court directed the debtors to give notice to all unknown creditors by

publication in *The New York Times* (national edition), *The Wall Street Journal* (national and

European editions), and *USA Today* (worldwide).

The debtor represents that Mr. Alexander was mailed a copy of the notice of

commencement of the case but concedes he was not sent the separate notice of claims bar

date.  Mr. Alexander for his part represents that he was not aware of the chapter 11 filing

and did not learn of it until late May 2005.  In any event, his two claims (Claim No. 5207 for

$7,503,670.00 and Claim No. 5208 for $2,163,422.00), were filed on  July 7, 2005

(approximately five months after the claims bar date).  The $2.2 million claim states as its

basis, "Federal Discrimination Claims, ADA and Title VII," while the $7.5 million claim

states, "Federal Employment discrimination, HIPPA & PRIA Claims & State Tort Claims."

Mr. Alexander represents that he was hired by Piedmont as a pilot in 1998.  In his

lawsuit, he alleges that in early 2003 he was placed on disability leave for approximately

three months.  After being released to return to work, he elected to take leave under the

Family Medical Leave Act, beginning April 11, 2003, due to the birth of his first child.

While on family medical leave, he received a job offer with another airline, Air Tran

Airways, Inc. ("Air Tran").  He accepted the Air Tran offer and submitted a resignation to

US Airways.  Air Tran, however, terminated his employment after approximately a month.

Mr. Alexander alleges that Air Tran did so based on what Mr. Alexander says was private

and derogatory information that Piedmont provided to Air Tran.  In his declaration, Mr.

Alexander states that he brought an Equal Employment Opportunity Commission (EEOC)

complaint against Piedmont in 2003 and received a right to sue letter.  However, the copy of

the EEOC Determination dated July 22, 2004, that he supplied clearly shows Air Tran, not

Piedmont, as the respondent.  The right-to-sue letter dated May 31, 2005, does not list a

respondent at all, although it contains a "cc:" notation that a copy was provided to Piedmont

Airlines.

In any event, on May 4, 2005, Mr. Alexander filed suit against AirTran, Piedmont,

and two Piedmont employees in the United States District Court for the Northern District of

Georgia for injunctive relief and monetary damages for alleged violations of the

Rehabilitation Act, Family Medical Leave Act, 49 U.S.C. § 44703, and "HIPPA,"[1] as well as

for state law torts of invasion of privacy, tortious interference with contractual rights and

business opportunities, and intentional infliction of emotional distress.  In response, the

debtor filed a suggestion in bankruptcy on May 24, 2005.  Mr. Alexander then filed the two

proofs of claim that are at issue, sending copies to the designated claims agent by certified

mail.  The proofs of claim are dated June 29, 2005, although the cover letter is dated June

31, 2005.  The claims were stamped by the claims agent as received  on July 7, 2005.

---

[1] More correctly, HIPAA, which is the common abbreviation for the Health Insurance
Portability and Accounting Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936.  The act is
codified in several titles of the United States Code, but the medical record privacy
provisions on which Mr. Alexander appears to rely are set forth at 42 U.S.C. § 1320d *et seq*.

3

A joint plan of reorganization for all the debtors, including Piedmont, was confirmed

on September 16, 2005.  On November 15, 2005, the debtors filed a motion asking the court

to confirm the disallowance of late filed proofs of claims, including the two proofs of claim

filed by Mr. Alexander.  Mr. Alexander objected to the motion on the ground that he had

received "no notification of the bankruptcy and the bar date prior to the deadline."

Discussion

This court recently had occasion to explore the issue of late-filed claims in

connection with a motion brought by another creditor in this same case.  *In re US Airways,*

*Inc.*, No. 04-13819-SSM (Bankr. E.D.Va., November 21, 2005), *available at*

http://www.vaeb.uscourts.gov/opinions/ssm/usairways%2004-13819%2011-21-2005.pdf.

As explained in that opinion:

> Except for certain scheduled claims that are "deemed" filed, a
> creditor must file a proof of claim by the claims bar date in
> order to receive a distribution in a chapter 11 case.
> Fed.R.Bankr.P. 3002(c).  This is subject to two qualifications.
> First, the creditor must have been provided with constitutionally
> adequate notice of the claims bar date.  *City of New York v. N.Y,*
> *New Haven & Hartford R. Co*., 344 U.S. 293, 73 S.Ct. 299, 97
> L.Ed. 333 (1953).  And second, even when notice is adequate,
> the court may allow a late proof of claim upon a proper showing
> of excusable neglect.  *Pioneer Investment Services Co. v.*
> *Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct.
> 1489, 123 L.Ed.2d 74 (1993).

*Id.* at 3-4.  The question before the court, therefore, is whether Mr. Alexander received

constitutionally adequate notice of the bar date, and, even if he did, whether a late filing

should nevertheless be allowed based on excusable neglect.

I.

With respect to the issue of notice, due process requires that a known creditor be provided with actual notice of all important steps in a bankruptcy case.  A "known" creditor is a party whose claim is sufficiently choate and grounded in fact and law that it necessarily must be removed from the realm of mere speculation and conjecture.  To have a known claim — at least in those circumstances in which the existence of a claim would not otherwise be obvious from the surrounding circumstances — a creditor must generally provide the debtor with some communication that reasonably apprises the debtor of the basis for the claim and the creditor's intent to hold the debtor liable for it.   A creditor who does not meet this test is not considered a "known" creditor and may be given constructive notice of the claims bar date by, for example, newspaper publication. *Id.* at 10-11.

The court is unable to conclude that Mr. Alexander was a known creditor of US Airways at the time notice of the claims bar date was give.  At the outset, there is considerable ambiguity, to say the least, as to exactly what EEOC claims were made and when they were made.  On its face, the EEOC Determination of July 22, 2004, that Mr. Alexander was discriminated against under the Americans with Disabilities Act was made in a proceeding in which Air Tran, not Piedmont, was the respondent.  It is impossible to tell from the Notice of Right to Sue who the respondent is or what claims were asserted before the EEOC.  Since the "Charge Number" referred to in the Determination is different from that in the Notice of Right to Sue,[2] it may well be that the two documents relate to different

---

[2]  The Determination refers to Charge Number 110-2004-01032, while the Notice of Right to Sue refers to Charge Number 110-2004-02790.

5

respondents.  Given the "2004" in the Charge Number, the court would assume the charge

was brought in that year.  Without more, however, the court has no basis for determining

whether the charge was brought before or after the chapter 11 filing in September 2004 or

what stage the charge was at when the chapter 11 petition was filed.  Since the Northern

District of Georgia lawsuit was filed *before* the Notice of Right to Sue was issued, the court

can only conclude that the claims raised in the lawsuit are somehow different from those

referenced in the notice.  The bottom line is that Mr. Alexander has not established that he

had clearly asserted claims against Piedmont at the time the chapter 11 petition was filed.

As this court noted in its prior opinion, the Constitution does not place upon the shoulders of

the debtor the onerous task of broadly speculating as to the identity and theory of recovery of

each conceivable or possible creditor.  *Id.* (citing *Mennonite Bd. of Missions v. Adams,* 462 U.S.

791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)).

      After concluding that Mr. Alexander was an unknown creditor, the court must next

determine whether Mr. Alexander was provided at least constructive notice of the February

3, 2005, bar date.  In the present case, the debtors published notice of the bar date in *The Wall

Street Journal*, *The New York Times*, and *USA Today*.  This court finds that such notice was

reasonably calculated under the circumstances to apprise unknown creditors such as Mr.

Alexander of the existence of the applicable bar date and afford him an opportunity to present his

claims.

## II.

      Even when notice satisfies constitutional requirements, a creditor who does not receive

actual notice — or who receives it but for some reason does not timely act upon it — may seek

leave to file a late claim based on "excusable neglect."  The time for filing claims in a chapter

11 case is set by the court.  Fed.R.Bankr.P. 3003(c)(3); *see In re Best Products Co.,* 140 B.R.

at 359 (characterizing the bar date as a court-imposed statute of limitations).  However,

under Federal Rule of Bankruptcy Procedure 9006(b)(1), "if a party moves for permission to

act after having missed a deadline, the court 'may at any time in its discretion ... permit the

act to be done where the failure to act was the result of excusable neglect.'"  *Pioneer*

*Investment Services Co. v. Brunswick Associates, L.P.*, 507 U.S. 380, 399, 113 S.Ct. 1489,

1500, 123 L.Ed.2d 74 (1993).

As the Supreme Court has explained, the determination of what constitutes excusable

neglect is largely an equitable one, requiring courts to take into account all relevant

circumstances surrounding a party's failure to file a proof of claim prior to the bar date.

*Pioneer,* 507 U.S. at 394–95, 113 S.Ct. at 1498.  The factors that must be weighed include

(1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact

on judicial proceedings; (3) the reason for the delay, including whether it was within the

reasonable control of the movant and; (4) whether the movant acted in good faith.  *Id.*  The

burden of proving excusable neglect is on the creditor seeking to extend the bar date.  *In re*

*Nutri\*Bevco,* 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990).  Additionally, it has been held that

"'excusable neglect' is not easily demonstrated, nor was it intended to be." *Thompson v. E.I.*

*DuPont de Nemours & Co.,* 76 F.3d 530, 534 (4th Cir. 1996).

After carefully considering all the circumstances, the court is unable to find that Mr.

Alexander's failure to timely file his proofs of claim should be characterized as excuseable

neglect.  Given the extensive publicity surrounding US Airways's second chapter 11 filing –

7

which was widely reported in the press – it was certainly well within Mr. Alexander's control to have become informed about the case and to have filed a proof of claim prior to the claim bar date.  Additionally, for the reasons stated in the prior opinion, the court can only conclude that the filing of a claim some seven months after the bar date — and more than a month after the plan was confirmed — would seriously prejudice the efficient administration of a reorganization case of this magnitude and should not be excused absent rather compelling circumstances, which are simply not present here.

O R D E R

For the foregoing reasons, the court finds that US Airways provided Mr. Alexander with constitutionally sufficient notice of the bar dates.  The court also finds that Mr. Alexander has failed to demonstrate that his late filed claims should be allowed based on excusable neglect.  It is, accordingly,

**ORDERED:**

1.  The reorganized debtors' motion (Doc. # 3448) to disallow certain late-filed is granted with respect to Claims No. 5207 and 5208 filed by Timothy C. Alexander, and the claims are disallowed as having been filed after the claims bar date.

2.  Mr. Alexander is advised that an appeal lies from this order to the United States District Court for the Eastern District of Virginia.  Except as provided in Rules 8002(b) and (c), Federal Rules of Bankruptcy Procedure, any notice of appeal must be filed with the clerk of this court within **10 days** of the entry of this order.  The filing fee for a notice of appeal is $255.00.

   3.  The clerk shall mail a copy of this memorandum opinion and order, or give

electronic notice of its entry, to the parties listed below.


Date: _____          _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge


Copies to:

Timothy Alexander
1818 Rosewood Drive, NW
Cleveland, TN  37312
Creditor

Douglas M. Foley, Esquire
McGuireWoods, LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA  23510
Local counsel for the reorganized debtor

Malcolm Mitchell, Esquire
Vorys, Sater, Seymour & Pease, L.L.P.
277 South Washington Street, Suite 310
Alexandria, VA  22314
Local counsel for the Official Committee of Unsecured Creditors

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314