UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                              )
                                                    )
    US AIRWAYS, INC., *et al.*                )    Case No. 04-13819-SSM
                                                    )    Chapter 11 (Jointly Administered)
                 Debtors    )

**MEMORANDUM OPINION**

       This matter is before the court on an objection by BNY Capital Funding LLC ("BNY"), an affiliate of the Bank of New York, to the debtor's assumption of a Binding Letter of Intent (the "Letter of Intent") under which BNY had agreed to provide the debtor with leveraged lease equity for up to two regional jet aircraft. The questions to be decided are whether the Letter of Intent is an executory contract or is otherwise unenforceable against BNY as a contract to extend debt financing or financial accommodations. At a hearing held on January 19, 2006, the court ruled from the bench that the Letter of Intent was not an executory contract and remained enforceable against BNY. An order has previously been entered reflecting that ruling. The purpose of this opinion is to explain somewhat more fully—for the benefit of the parties and any appellate court—the reasons for the ruling.

Background

       The facts are not in dispute. US Airways, Inc.—then the seventh largest airline in the United States—filed a petition for reorganization under chapter 11 of the Bankruptcy Code in this court on September 12, 2004. This was the company's second chapter 11 filing. The

1

previous case was filed on August 11, 2002, and resulted in confirmation of a plan on March 18, 2003. In connection with the company's emergence from the first chapter 11 case, US Airways and BNY signed a document entitled Binding Letter of Intent dated February 27, 2003. In the letter, the parties agreed that in consideration for US Airways' assumption of two Airbus A320 aircraft leases in which BNY had an interest, BNY would provide financing for the purchase of up to two new CRJ-200LR or CRJ-700ER regional jet aircraft at US Airways' election and upon US Airways' satisfaction of certain conditions precedent.[1] Under the agreement, US Airways could elect to have BNY provide the financing for one of the aircraft as early as June 2004, and for the second as early as June 2005.[2] The Letter of Intent does not specify an outside date by which US Airways must act.

On June 30, 2005, US Airways filed its proposed chapter 11 plan and disclosure statement in the present case. On August 9, 2005, the court entered an order approving the disclosure statement, and on September 16, 2005, the court entered an order confirming the plan (with certain amendments not relevant here). The plan became effective as of September 27, 2005. Attached to the plan was Exhibit U-3, which is entitled "Contracts Assumption Schedule." Exhibit U-3 lists a broad universe of agreements that US Airways sought to assume in connection with confirmation of the plan. Among the agreements listed

---

[1] Notably, the conditions precedent that apply to aircraft delivered on or after December 31, 2004, include a requirement that US Airways have a minimum senior unsecured credit rating of B- by Standard & Poor's or B3 by Moody's Investors Services immediately prior to the closing dates of each of the leases.

[2] The Letter of Intent contemplates that the aircraft would be financed with leveraged leases between US Airways as lessee; BNY as owner participant; a U.S. grantor trust with BNY as the sole beneficiary as lessor; and a lender to be determined. Under the terms of the letter, BNY could be required to provide as much as $9 million in financing.

2

on the schedule is the Letter of Intent between US Airways and BNY.[3]  However, the plan and disclosure statement, as well as the confirmation order, contain a disclaimer that Exhibit U-3 may include agreements that are not actually executory contracts.  The confirmation order also provides that "[a]ny dispute relating to the Debtors' ability to assume or reject an executory contract" could be brought before the court.[4]

On November 14, 2005—almost two months after confirmation of the plan—BNY filed the objection that is presently before the court to US Airways' assumption of the Letter of Intent.  BNY explains that it did not file its objection sooner because it was never served with a copy of Exhibit U-3.[5]  Aside from this, however, BNY principally argues that the

---

[3] The letter agreement appears alongside thousands of other contracts and unexpired leases as a "Binding Letter of Intent Dated 2/27/03 With Respect to Regional Jet Fnancing [sic] to Be Provided By BNY."

[4] The relevant portion of the confirmation order is as follows:

> Assumptions and Rejections. The provisions of Article VIII of the Plan, including but not limited to, the actions contemplated by Exhibits U-1 (Docket No. 3065), U-2 (Docket No. 3067), U-3 (Docket No. 3182), U-4 (Docket No. 3068), U-5 (Docket No.3183) to the Plan, are hereby approved in their entirety. … All of the rejected executory contracts and unexpired leases shall be rejected only to the extent that any such contract or lease constitutes an executory contract or unexpired lease, and this Confirmation Order shall constitute an order approving such rejections, pursuant to section 365 of the Bankruptcy Code.  Any dispute relating to the Debtors' ability to assume or reject an executory contract or unexpired lease as set forth in the Plan exhibits shall be set for hearing no sooner than the next regularly scheduled omnibus hearing date that is at least ten (10) days after the date of entry of this Order and the filing of an objection to any such assumption or rejection.

[5] BNY asserts that it was not served a copy of the disclosure statement until August 16, 2005, and that Exhibit U-3 was not originally a part of the disclosure statement or the chapter 11 plan.  It is true that Exhibit U-3 was not appended to the plan of reorganization until August 29, 2005.  US Airways, however, asserts that their records show that BNY or its counsel did in fact receive service of the plan of reorganization and all accompanying

(continued...)

3

Letter of Intent is an executory contract to extend financial accommodations within the meaning of § 365(c)(2) of the Bankruptcy Code, and, accordingly, is not assumable. For its part, US Airways responds that the Letter of Intent—notwithstanding its inclusion on Exhibit U-3—is not actually an executory contract, and is therefore not subject to the restrictions of § 365(c)(2). This is so, US Airways argues, because the Letter of Intent is simply a contingent, unexercised right to obtain financing at a future time—in other words, an unexercised option. US Airways says that under § 541(a) of the Bankruptcy Code, the right to exercise the option became property of the bankruptcy estate on the petition date, and that under § 1141(b) it vested in the reorganized debtor on the effective date of the plan of reorganization. BNY retorts that the legislative history to § 365(c)(2) requires that all commitments to extend future financial accommodation, such as the Letter of Intent, be characterized as executory contracts. The court will consider these arguments in turn.

---

[5](...continued)
exhibits, including Exhibit U-3. BNY claims that this statement is in error because even though its counsel, Pillsbury Winthrop Shaw Pittman, LLP, appeared in the present case, it appeared only as representative to The Bank of New York, which is an entirely separate corporate entity. The court need not resolve the notice issue, however. First, the confirmation order does not in literal terms set a deadline or outside date by which a "dispute" concerning the debtors' ability to assume or reject a contract had to be filed with the court—all the order specifies is the *earliest* date on which a hearing could be set. Second, since the court agrees with US Airways that the Letter of Intent is *not* an executory contract, any deadline—assuming there were one—to object to assumption or rejection would simply not apply.

Discussion

I.

Section 365 of the Bankruptcy Code allows a trustee or chapter 11 debtor in possession,[6] with court approval, to assume or reject any executory contract or unexpired lease. This provision has been the source of some confusion because neither § 365 nor any other provision of the Code specifically defines the phrase "executory contract." The Supreme Court has observed that Congress intended the term to apply to contracts "'on which performance remains due to some extent on both sides.'" *National Labor Relations Board v. Bildisco and Bildisco,* 465 U.S. 513, 522–23 n.6, 104 S.Ct. 1188, 1194 n.6, 79 L.Ed.2d 482 (1984) (quoting H.R. Rep. No. 95-595 (1978), *reprinted in* Lawrence P. King, *Collier on Bankruptcy*, at App. Pt. 4-1482 (15th ed. 2005)). Most courts, including the Fourth Circuit, have expanded upon this somewhat general formulation by adopting the test first articulated by Professor Vern Countryman in a celebrated law review article. Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973); *Gloria Manufacturing Corp. v. Int'l Ladies' Garment Workers' Union,* 734 F.2d 1020 (4th Cir. 1984) (adopting Countryman test).[7]

---

[6] Under § 1101 of the Bankruptcy Code, the debtor in possession is the debtor in any chapter 11 case in which no trustee is serving. Section 1107 provides that "[s]ubject to . . . such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights . . . and powers" of a trustee other than the right to compensation.

[7] Other courts have de-emphasized the Countryman formulation in favor of a so-called "functional" definition. *See In re Gen. Dev. Corp.*, 84 F.3d 1364, 1374 (11th Cir. 1996) (affirming lower court holding that "[e]ven though there may be material obligations outstanding on the part of only one of the parties to the contract, it may nevertheless be deemed executory under the functional approach if its [assumption or] rejection would

(continued...)

5

The Countryman definition describes an executory contract as one "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." This definition by its very terms requires mutuality with respect to the remaining obligations of the parties. The test seeks to ensure that the trustee's right to assume or reject is "'an option to be exercised when it will benefit the estate,'" and that the right does "'not extend to situations where the only effect of its exercise would be to prejudice other creditors of the estate.'" *Huntington Nat'l Bank Co. v. Alix* (*In re Cardinal Industries Inc.*), 146 B.R. 720 (S.D. Ohio 1992) (quoting *Cohen v. Drexel Burnham Lambert Group, Inc.* (*In re Drexel Burnham Lambert Group, Inc.*), 138 B.R. 687 (Bankr. S.D.N.Y. 1992)). The relevant date determining whether a contract is executory is the date of the filing of the bankruptcy petition. *In re Sunterra Corp.*, 361 F.3d 257, 264 (4th Cir. 2004).

US Airways argues that as of the petition date the Letter of Intent was no more than an unexercised option, which necessarily precludes its classification as an executory contract. However, the question of whether an unexercised option is executory is not quite as clear-cut as US Airways suggests. In a typical option contract each party may have unperformed obligations, but they are contingent on the optionee's decision to exercise the option. The optionee here, of course, would be US Airways. However, once the optionee chooses to exercise the option, not only does the optionor—which in this case would be

---

[7](...continued)
ultimately benefit the estate and its creditors."); Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts*, 74 Minn.L.Rev. 227 (1989).

BNY—have a duty to perform, the optionee may have a reciprocal duty to tender payment or perform some other obligation as required by the agreement. Most courts have nevertheless concluded that because a optionee has fulfilled its only true obligation under an option by paying for the option,[8] and because further obligations arise solely at the debtor's discretion, option contracts are non-executory. *See, e.g., Bronner v. Chenoweth-Massie P'ship, (In re National Financial Realty Trust)*, 226 B.R. 586, 589 (Bankr. W.D. Ken. 1998) (debtor's option to repurchase real estate); *In re Simon Transp. Servs., Inc.*, 292 B.R. 207, 218 (Bankr. D. Utah 2003) (options to trade in used trucks at a favorable price when purchasing new trucks). At least some courts, however, have taken a contrary view and have held that although the optionee's obligations are contingent, they are nevertheless obligations, thus making option contracts executory. *See, e.g., A.J. Lane & Co.,* 107 B.R. 435 (Bankr. D. Mass. 1989) (option to repurchase real estate from the debtor); *In re Riodizio, Inc.,* 204 B.R. 417 (Bankr. S.D.N.Y. 1997) (option to purchase controlling share of debtor's stock).

This court finds the first line of cases to be the more persuasive.[9] To be sure, merely characterizing an agreement as an option contract is not dispositive. Rather, each option-type contract must be examined on a case-by-case basis to determine whether it is executory. Specifically, the question is this: at the time the bankruptcy petition is filed, does each party

---

[8] In the present case, the consideration for the option was not a cash payment, but rather US Airways's assumption of the two existing BNY leases. That obligation was fully performed at the time US Airways emerged from its first chapter 11 case.

[9] The court also finds support for its conclusion outside the bankruptcy context. "The traditional view regards an option as a unilateral contract which binds the optionee to do nothing, but grants him the right to accept or reject the offer in accordance with its terms within the time and in the manner specified in the option." 1 Williston on Contracts § 5:16 (4th ed. 1990).

have something it must do to avoid materially breaching the contract? If the agreement is a true option, the answer will be no, since the optionee commits no breach by doing nothing. *Unsecured Creditors' Comm. of Robert L. Helms Construction & Development v. Southmark Corp.* (*In re Robert L. Helms Construction and Development Co., Inc.*), 139 F.3d 702, 706 (9th Cir. 1998) (Kozinski, J.); *In re Nat'l Fin. Realty Trust*, 226 B.R. at 589.

In the present case, the court finds that the agreement in question, the Letter of Intent, was a non-executory option contract. At the time it filed its chapter 11 petition, US Airways, the optionee, held the right, but not the duty, to require BNY, subject to certain conditions precedent, to provide US Airways with leveraged lease financing for up to two new aircraft. There is no suggestion that US Airways had taken any action prior to the second chapter 11 filing to exercise the option. As a result, US Airways was free to ignore the Letter of Intent and to look elsewhere for aircraft financing—or for that matter, not to acquire additional aircraft at all. Since US Airways had no obligation to BNY on the filing date, the Letter of Intent was not an executory contract under the Countryman definition.

## II.

BNY argues, however, that even if the court determines that the Letter of Intent is not executory under the Countryman test, this court should nevertheless find it to be executory for purposes of § 365(c)(2), which prohibits a trustee or debtor in possession from assuming "any executory contract . . . if . . . such contract is a contract to make a loan, or to extend other debt financing or financial accommodations[.]" This requires the court to decide a rather nettlesome issue—whether the Countryman test applies (or should apply) to financial accommodation agreements. BNY points out that Professor Countryman's

analysis of executory contracts was published prior to the adoption of § 365(c)(2), and, moreover, does not address loan commitments or financial accommodation contracts. Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439 (1974) and *Executory Contracts in Bankruptcy: Part II,* 58 Minn. L. Rev. 479 (1975). BNY proposes a test under which any unperformed agreement to lend money or extend credit at a future time would be considered executory for the purpose of § 365(c)(2) and therefore non-assumable. Put another way, BNY argues that the relevant inquiry is not whether the optionee under a financing agreement like the Letter of Intent in this case had an obligation, as required by the Countryman test, but simply whether the optionee had a right to exercise the option.

Principally, BNY asserts that § 365(c)(2) and its legislative history preclude the bankruptcy estate from assuming financial accommodation contracts, whether or not executory under the Countryman test. Specifically, BNY points to language in the legislative history explaining that the subsection "prohibits the trustee's assumption of an executory contract requiring the other party to make a loan . . .. The purpose of this subsection is to make it clear that a party to a transaction which is based upon the financial strength of a debtor not be required to extend new credit to the debtor." S. Rep. No. 95-989, at 57 (1978), *reprinted in* King, *supra,* at App. Pt. 4-1999. This court's ability to rely on legislative history, however, is circumscribed. As the Supreme Court has consistently held, in interpreting the Bankruptcy Code, this court must begin with the text of the statute itself. *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). When the statute is clear and unambiguous

9

on its face, the court must apply the plain meaning of the statute and enforce it according to its terms. *Patterson v. Shumate*, 504 U.S. 753, 757, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992) ("the plain language of the Bankruptcy Code . . . is our determinant"); *Toibb v. Radloff*, 501 U.S. 157, 160, 111 S.Ct. 2197, 2199, 115 L.Ed.2d (1991) ("In our view, the plain language of the Bankruptcy Code disposes of the question before us."); *Ron Pair Enterprises*, 489 U.S. at 241, 109 S.Ct. at 1030 ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute.").

As noted, § 365(c)(2) provides that a trustee or debtor in possession "may not assume or assign an executory contract or unexpired lease . . . if such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor." Since the Bankruptcy Code, as previously observed, does not define "executory contract," it could be argued that the "plain language" of the statute does not answer the question, thereby justifying resort to legislative history. But while the term "executory contract" clearly falls outside the language of everyday discourse and must fairly be considered a technical term of art, that does not mean it lacks a settled meaning. The Fourth Circuit, when it adopted the Countryman test in *Gloria Manufacturing Corp. v. Int'l Ladies' Garment Workers' Union*, concluded that Congress had "ratified the pre-Code practice . . . of relying on Professor Vern Countryman's definition of executory contracts." 734 F.2d at 1022. At least within the Fourth Circuit, then, the term executory contract has a well-settled meaning. Looking at the text of the statute itself, there is nothing to suggest that the term "executory contract" was meant to have a different

meaning in subsection (c)(2) than elsewhere in § 365. Certainly, Congress could have provided a special or expanded definition (e.g., "For the purpose of this subsection, an executory contract shall include any contract to make a loan, etc.") or it could have stated that a debtor could not assume "any" or "a" contract to make a loan. Instead, Congress specifically addressed "executory" contracts to make a loan. In the absence of something in the text of the statute suggesting otherwise, the court can only assume Congress did so with full knowledge of the settled meaning of the term.

BNY, while admitting there is a paucity of reported opinions on this question, has cited to an early case, *In re New Town Mall,* 17 B.R. 326 (Bankr. D. S.D. 1982), involving somewhat similar facts. In that case, the debtor, prior to filing a chapter 11 petition, had paid Mutual Benefit Life Insurance Company $136,000 for a commitment to make a $6.8 million mortgage loan. The court began by observing that it had "diligently searched for guidance from other courts regarding loan commitments and their assignment, assumption, modification, or termination," but found that very little had been written. *Id.* at 328. The loan commitment by its terms was set to expire five months after the chapter 11 filing, and the debtor had not yet satisfied the conditions precedent (which among other things included "satisfactory financial statements evidencing the borrower's solvency") for the making of the loan. *Id.* at 327. The actual issue that brought the matter before the court was an "Application for an Order Maintaining the Status Quo," which sought a ruling that the automatic stay tolls the expiration of a loan commitment. Before reaching that question, the court addressed whether a loan commitment was assumable by a debtor in possession and held, relying primarily on legislative history, that "executory contracts such as loan

commitments are not assignable or assumable by a debtor-in-possession." *Id*. at 328. The court then went on to hold that the automatic stay did not toll the expiration of the loan commitment, and further explained that even if the court had the equitable power to extend the time, it would not do so:

> When Debtor filed bankruptcy, the Commitment with all of its terms and conditions *was a considerable asset of Debtor*. But there is no provision in the Bankruptcy Code which grants a debtor greater rights under a loan commitment than it had outside bankruptcy.

*Id*. at 329 (emphasis added). This comment that the loan commitment was "a considerable asset" is somewhat puzzling if, as stated earlier in the opinion, the debtor-in-possession had no right to assume it. More to the point, the court in *New Town Mall* simply assumed, without any analysis or discussion, that a loan commitment was an executory contract. There is no discussion in the opinion of the Countryman test, or indeed of any test. For that reason, this court does not find *New Town Mall* persuasive on the question to be decided here.

### III.

This court is not unmindful that allowing debtors (whether debtors in possession or, as here, a reorganized debtor) to hold other parties, such as BNY, to financing commitments entered into prior to bankruptcy simply because the commitment was not executory on the filing date is arguably bad policy. If, indeed, the underlying purpose of § 365(c)(2) is to prevent "a party to a transaction which is based upon the financial strength of the debtor" from being "required to extend new credit to the debtor," it is hard to see why that policy would not be equally implicated and equally compelling regardless of whether the

agreement in question was executory or non-executory on the filing date. The fact remains, however, that the statute specifically refers to executory contracts. Perhaps this was an oversight. Perhaps not. However, the court must take the statute as it finds it, and if the language of the statute does not fully accomplish what Congress intended, the remedy lies with Congress, not the courts. *In re Lozada,* 214 B.R. 558 (Bankr. E.D. Va. 1997), *aff'd* 176 F.3d 475 (4th Cir. 1999) (citing *Patterson v. Shumate,* 504 U.S. at 759, 112 S.Ct. at 2247). Put another way, simply because Congress may not have predicted all of the consequences when it used particular words in a statute is not a sufficient basis for failing to apply the statute as written. *Id.*

The court is constrained to note, however, that regardless of whether it is fair in the abstract to require a lender such as BNY to honor a non-executory financing commitment after the debtor files for bankruptcy, it is difficult to see how such a holding reaches an unjust result in this particular case. This is not a situation in which BNY entered into an agreement with a financially robust customer, with no whiff of bankruptcy in the air, and is now being asked to lend to a deadbeat. US Airways was already in chapter 11 (albeit poised to emerge) at the time the Letter of Intent was signed. BNY knew that US Airways was in financial distress. It could and did protect itself against financial risk by requiring, among other conditions, that US Airways demonstrate an ability to make the lease payments by having, at the time each lease closed, a minimum specified Standard & Poor's or Moody's credit rating. That requirement has not been erased. Assuming, therefore, that US Airways achieves such a rating, there is no reason to believe that BNY would be undertaking any greater risk than was within its contemplation at the time the Letter of Intent was signed.

In any event, for the reasons stated, the court holds that the binding letter of intent was not an executory contract on the date of the bankruptcy filing and is therefore not subject to the restriction on assumption in § 365(c)(2), Bankruptcy Code.  US Airways' right to exercise the option and to obtain the leveraged lease financing was an asset that became property of the bankruptcy estate when the chapter 11 case was commenced and revested in US Airways on the effective date of the confirmed plan.  For that reason, BNY's objection to assumption must be overruled.

An order has previously been entered consistent with this opinion.

Date: _____              _____
                                          Stephen S. Mitchell
Alexandria, Virginia                      United States Bankruptcy Judge

Copies to:

Douglas M. Foley, Esquire
McGuireWoods, LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA  23510
Local counsel for the reorganized debtor

Benjamin C. Ackerly, Esquire
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Local counsel for BNY Capital Funding

Karen B. Dine, Esquire
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, New York 10036
Counsel for BNY Capital Funding

Malcolm Mitchell, Esquire
Vorys, Sater, Seymour & Pease, L.L.P.
277 South Washington Street, Suite 310
Alexandria, VA  22314
Local counsel for the Official Committee of Unsecured Creditors

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314