UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| US AIRWAYS, INC., *et al.* | ) | Case No. 04-13819-SSM |
| | ) | Chapter 11 (Jointly Administered) |
| Debtors | ) | |

**MEMORANDUM OPINION**

This matter is before the court on cross-motions for summary judgment with respect to a $17 million employment discrimination claim by Philip A. Garland, who was employed by the debtor airline as a pilot from 1984 to 2001. Following oral argument on December 15, 2005, the court took the competing motions under advisement. Although many of the facts surrounding Mr. Garland's termination are hotly disputed, the court concludes that the claim—which arose prior to the debtor's first chapter 11 case—must be disallowed for the simple reason that confirmation of the plan in the first case limited Mr. Garland to a distribution of newly-issued stock, and all rights to stock issued in the first case were cancelled by the confirmed plan in the second case. Alternatively, even if that were not the case, the claim is barred by res judicata.

Background

US Airways, together with its parent holding company and several affiliates, filed a petition for reorganization under chapter 11 of the Bankruptcy Code in this court on September 12, 2004. This was the company's second chapter 11 filing. It had previously

1

filed a chapter 11 petition in this court on August 11, 2002.[1]  A plan was confirmed in the

first case on March 18, 2003, under which allowed unsecured claims (except for a

convenience class of small claims) would not be paid in cash but would instead receive

stock in the reorganized company.

At the time of the first chapter 11 case, US Airways had been involved in litigation

with Mr. Garland for some time.  Litigation first ensued in April 1986 when Mr. Garland

filed suit in the United States District Court for the Western District of Pennsylvania

alleging racial discrimination in US Airways' hiring and recruitment practices.  In 1991,

judgment was entered in favor of Mr. Garland requiring US Airways to assign him

retroactive seniority to November 13, 1982, and enjoining US Airways from further

discriminatory conduct.

Mr. Garland worked for US Airways without incident until June 1999, when he made

a bid to qualify for a new aircraft type, the B757/767, because it was a higher paying aircraft

than the B737 and DC-9 aircraft he had been flying.  On October 27, 1999, Mr. Garland

successfully completed his proficiency check ride enabling him to receive his Federal

Aviation Administration ("FAA") type rating and airline transport pilot certificate for the

B757/767 aircraft.  However, FAA regulations required Mr. Garland to submit to an annual

proficiency check ride administered by an FAA-approved check airman.  Mr. Garland failed

---

[1]  The US Airways case, No. 02-83985-SSM, was one of seven jointly administered cases, with the lead case being that of the parent holding company, US Airways Group, Inc., Case No. 02-83984-SSM.  Proofs of claim were filed in the case of the particular debtor that was liable for the claim.  All other pleadings and papers (including objections to claims in any of the jointly-administered cases) were filed in the lead case.

the FAA-administered check ride on October 29, 2000.  After additional flight simulator

training, Mr. Garland again took and failed the check ride on November 14, 2000.

After failing his second check ride, the FAA required Mr. Garland to submit to a

further check ride known as a "44709 check ride" to determine whether he should continue

to hold his airline transport pilot certificate.  Under its collective bargaining agreement with

its pilots union, the Air Line Pilots Association ("ALPA"), US Airways was required to

provide Mr. Garland with five hours of additional training.  US Airways went beyond its

contractual obligation, however, and provided Mr. Garland with a full transition training

course consisting of 115 hours of additional training.  On February 15, 2001, Mr. Garland

took the 44709 check ride but failed.

The FAA agreed to provide Mr. Garland with a second 44709 check ride with a

different examiner, and US Airways provided Mr. Garland with an additional five hours of

training.  On March 7, 2001, Mr. Garland again took and failed the check ride.  Thereafter,

the FAA revoked Mr. Garland's airline transport pilot certificate.  Because it could no longer

use Mr. Garland as a pilot, US Airways terminated his employment on December 4, 2001.

Following his termination, Mr. Garland filed a civil contempt complaint in the United

States District Court for the Western District of Pennsylvania arguing that his termination by

US Airways violated the 1991 injunction issued by that court.  In his complaint, he named

US Airways, five officers of US Airways, and the two FAA inspectors who conducted the

44709 check rides as defendants.  At the time the suit was filed, an arbitration challenging

his termination was pending before the US Airways-ALPA System Board.

3

The first chapter 11 case was filed while both the arbitration and the District Court action were pending. On October 1, 2002, Mr. Garland filed a proof of claim (Claim No. 146) in the first case in the amount of $17 million for alleged racial discrimination, retaliation, and harassment. According to the proof of claim, the debt was incurred on April 25, 2001, and as factual support, Mr. Garland attached a copy of the complaint he had filed in the District Court. US Airways filed an objection to Mr. Garland's claim as part of its Second Omnibus Objection to Claims (Doc. # 2128). On December 2, 2002, the District Court dismissed Mr. Garland's complaint. In the dismissal order, the Court noted that Mr. Garland's termination was the subject of arbitration, and that completion of the arbitration would obviate the need for further litigation. On February 7, 2003, the arbitration board issued its ruling upholding Mr. Garland's termination.

On March 18, 2003, this court confirmed the joint plan of reorganization in the first case (Doc. # 2986), which became effective on March 31, 2003. (Doc. # 3134). Under the plan, allowed unsecured claims would receive a distribution of newly issued stock in the parent holding company, US Airways Group, Inc. In the interim, Mr. Garland filed a motion on March 19, 2003, for reconsideration of the District Court's December 2002 order, alleging that US Airways engaged in fraud in obtaining the arbitration award. On March 21, 2003, that Court issued an order denying Mr. Garland's motion. After this court entered a consent order allowing Mr. Garland partial relief from the chapter 11 plan injunction, Mr. Garland again filed suit against US Airways in the District Court on May 7, 2003 asking for "Trial de Novo and Hearing Date." On May 13, 2003, the Court again dismissed the case on grounds that Mr. Garland's motion was an untimely filed motion for reconsideration of the

December 2002 order.  Mr. Garland filed a notice of appeal with the Third Circuit on May

23, 2003, regarding the denial of his May 2003 motion.  On November 28, 2003, the Court

of Appeals dismissed Mr. Garland's appeal for lack of appellate jurisdiction on grounds that

his notice of appeal was filed 171 days after the District Court's December 2002 order.

 After the dismissal of his appeal, Mr. Garland filed yet another pleading with the

District Court on January 4, 2004.  The pleading was entitled "Motion To Vacate And Set

Aside Orders Upon Evidence Of Fraud, Fraud Upon The Court, Collusion And Corruption

Pursuant To FRCP 60(b); Motion For Contempt; Motion To Add New Claims And Parties

And Scheduling Order."  On July 15, 2004, the District Court once again dismissed Mr.

Garland's motion as an untimely filed motion for reconsideration.  On July 29, 2004, Mr.

Garland filed a second notice of appeal with the Third Circuit.

 While all this was going on, the objection to Mr. Garland's claim was routinely

continued every time it came up for hearing.  On September 12, 2004, the second chapter 11

case was filed, thereby staying the appeal before the Third Circuit.  Mr. Garland filed a proof

of claim (Claim No. 3007) in the second case on February 1, 2005, again in the amount of

$17 million.  The proof of claim states that it is an amendment of the claim filed in the first

case and shows the claim as having arisen on April 27, 2001.

 A plan of reorganization was confirmed in the second case on July 28, 2005.  Under

the plan, all existing stock was cancelled, including the pool of shares that had been issued

to pay claims under the first plan. Prior to confirmation of the plan in the second case, US

Airways had filed its Second Omnibus Objection to Claims (Doc. # 2329), which included

Mr. Garland's claim.  Mr. Garland filed a response to this objection (Doc. # 2669), and a

status hearing on the objection had been set for October 20, 2005.  Prior to the hearing, Mr.

Garland telephoned Lawrence Rifkin, one of the attorneys for US Airways, and left a

message with him.  Sarah Boehm, another attorney for US Airways, returned the call.

According to Mr. Garland, Ms Boehm told him that his matter had been continued until

December 15, 2005.  Shortly before the October 20th hearing, Mr. Garland called chambers

and asked whether the hearing on his claim had been continued.  Mr. Garland was told by

chambers staff that the matter was still shown on the calendar.  At the hearing, US Airways

requested an adjournment of its Second Omnibus Objection, which the court granted,

continuing the matter until December 15, 2005.  In the mean time, Mr. Garland had filed on

October 19, 2005, a "Motion for Wilful [sic.] and Deliberate Contempt; Motion to Affirm

Modification of Stay; Motion for Summary Action for Allowed Claim for Full Face Value

and Motion for Other Relief Not Deemed Property of the Debtor's Estate." (Doc. # 3322).

In this motion, Mr. Garland alleges that Ms. Boehm "purposefully misinformed him" that

the matter had been continued in order to cause his absence thereby "jeopardizing his

claim."  Mr. Garland argues that this act merits sanctions against US Airways' counsel and

summary judgment in his favor on his claim.  On November 30, 2005, US Airways filed a

response to Mr. Garland's allegations together with its own motion for summary judgment.

(Doc. # 3534).

Discussion

I.

A  court may grant summary judgment where there is no genuine issue of material fact

and the movant is entitled to judgment as a  matter of law.  Fed. R. Civ. P. 56; Fed. R. Bankr. P.

6

7056; *In re T.I. Swartz Clothiers, Inc*., 15 B.R. 590, 592 (Bankr. E.D. Va. 1981) (citing *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur.Co.,* 381 F.2d 245, 249 (4th Cir. 1967)). Summary judgment is not a "disfavored procedural shortcut," but rather an important judicial mechanism for efficiently filtering "claims and defenses that have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Once the moving party shows that there exists no genuine issue of material fact in the record, the burden shifts to the non-moving party to come forward with specific, material, admissible facts to show that there is a genuine issue for trial. In meeting this burden of production, the party opposing summary judgment may not rely on its own speculation or unsupported allegations to defeat a summary judgment motion. *See* Fed. R. Civ. P. 56(e); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). If the non-moving party cannot present a genuine issue of material fact, the court should grant summary judgment for the moving party as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

A.

Procedurally, there are two otherwise-identical claims before the court: Claim No. 146, filed in the first chapter 11 case,[2] and Claim No. 3007, filed in the present case. The claim arises from the termination of Mr. Garland's employment and the events leading up to it. Since Mr. Garland's employment was terminated on December 4, 2001, eight months prior to the first chapter 11 case, the claim was a general unsecured claim in that case and, except to the extent provided for under the confirmed plan, was discharged in that case. § 1141(d)(1), Bankruptcy

---

[2] Soon after the second case was filed, the unresolved claim objections from the first case were transferred for administrative purposes to the second case so that the first case could be closed. The transfer did not otherwise affect the status of the claim.

Code.[3]  The treatment of general unsecured claims against US Airways, Inc., is set forth in

section 5.2(g) of the confirmed plan,[4] which provides for holders of allowed unsecured claims to

receive a pro rata distribution from a pool of newly-issued common stock, preferred stock, and

warrants in US Airways Group.  Whether Mr. Garland's claim were allowed in the amount of

$17 million or zero dollars would therefore affect only the amount of stock he received, not the

underlying fact that whatever prepetition claim he had against US Airways had been discharged

and replaced by an equity interest in the reorganized company.

　　　The confirmed plan in the second chapter 11 case, however, *cancelled* all existing stock,

including the pool of stock from which Mr. Garland's claim would have been paid, and expressly

provided that the holders of equity interests "shall not be entitled to, and shall not, receive or

---

[3]  There is a suggestion in Mr. Garland's papers that the claim was not subject to discharge
because it arises from an intentional tort.  This is not correct.  Although §§ 523(a)(6) and
1141(d)(2), Bankruptcy Code, exclude debts arising from willful and malicious injury from
discharge in the case of an *individual* debtor, the exception does not apply to a chapter 11
*corporate* debtor, which receives a discharge of *all* pre-confirmation debts unless the plan is
a liquidating plan and the debtor does not engage in business after consummation of the
plan.

[4]  Section 5.2(g) of the plan states in relevant part:

　　　[O]n the first Periodic Distribution Date occurring after the later of (i) the date a
　　　General Unsecured Claim becomes an Allowed General Unsecured Claim or (ii)
　　　the date a General Unsecured Claim becomes payable pursuant to any agreement
　　　between USAI (or Reorganized USAI) and the holder of such General Unsecured
　　　Claim, the Disbursing Agent shall deliver to such Allowed Class USAI-7 General
　　　Unsecured Claimholder in USAI's Chapter 11 Case, in full satisfaction,
　　　settlement, release, and discharge of and in exchange for each and every Class
　　　USAI-7 General Unsecured Claim, such Claimholder's Pro Rata share of (a) four
　　　million nine hundred sixty-eight thousand seven hundred twenty (4,968,720 )
　　　shares of Class A Common Stock, (b) three million forty-eight thousand thirty
　　　(3,048,030) shares of Class A Preferred Stock, and (c) three million forty-eight
　　　thousand thirty (3,048,030) Class A-1 Warrants.

8

retain any property or interest in property under the plan on account of such [i]interests."  Plan

§ 5.2(k).  The combined result of the first and second plans, therefore, is to render the claim in

the first case entirely moot.  Even if the claim had been allowed in the amount of $17 million

dollars, as set forth in the proof of claim, Mr. Garland's only entitlement would have been to

receive a pro rata distribution from a pool of stock which has since been cancelled.  Accordingly,

Claim No. 146 from the first case is moot.

B.

The proof of claim filed in the second case must be disallowed for a more fundamental

reason: namely, that it was discharged in the first case.  A claim is not allowable in bankruptcy to

the extent that it "is unenforceable against the debtor . . . under applicable law."  § 502(b)(1),

Bankruptcy Code.  The Bankruptcy Code itself constitutes "applicable law," such that discharge

of a debt in a prior case requires disallowance in a later case.  Accordingly, Claim No. 3007 in

the present case will be disallowed.

II.

Even assuming that Mr. Garland's claim presented a live controversy, this court would

have to disallow the claim on the ground of res judicata.  Under res judicata, or claim preclusion,

"a final judgment on the merits bars further claims by parties or their privies based on the same

cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 973, 59 L. Ed. 2d

210 (1979).  As applied, the elements of the doctrine are: (1) a final judgment on the merits in an

earlier suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an

identity of parties or their privies in the two suits. *Nash County Bd. of Educ. v. Biltmore Co.*, 640

F.2d 484, 486 (4th Cir. 1981).

9

The doctrine certainly applies in the present case.  First, Mr. Garland's claim that he was

discriminated against by US Airways in 2001 was fully adjudicated when it was arbitrated before

the US Airways-ALPA System Board, and the United States District Court for the Western

District of Pennsylvania denied Mr. Garland's  motion to vacate the arbitration ruling.  The

District Court denied Mr. Garland's motion for reconsideration, and the Third Circuit Court of

Appeals dismissed Mr. Garland's appeal of the District Court's rulings.  The fact that Mr.

Garland continues to seek reconsideration does not change the fact that he has already had his

day in court and that a final judgment has been entered dismissing his claim.  Secondly, the

cause of action is the same in each instance.  Mr. Garland claimed in 2001 exactly what he

claims today—that US Airways engaged in racial discrimination when it terminated his

employment in 2001.  Lastly, there is identity of the parties.  US Airways and Mr. Garland were

parties in the proceedings before the arbitrator, the District Court and the Court of Appeals.

They are currently the parties before this court.  Accordingly, even if his claim in the first case

were not moot and his claim in the second case not barred by the discharge in the first case, the

claim would be barred by res judicata.

III.

Finally, Mr. Garland seeks sanctions (including summary allowance of his claim)

because Ms. Boehm "deliberately and purposefully misinformed him that the October 20, 2005,

calendar call for hearing had been continued," when it had not.  While it is true that the objection

to Mr. Garland's claim was on the calendar as part of US Airways' Second Omnibus Objection

to claims, there is no evidence that Ms. Boehm deliberately misled Mr. Garland in order to

10

prejudice his claim.  Two days prior to the hearing, US Airways had filed a proposed agenda

which stated that US Airways would be requesting a continuance of the claim objection:

> The Reorganized Debtors are in the process of contacting the
> claimants who responded to the Second Omnibus Objection. The
> status hearing with respect to this matter will go forward. *The
> Reorganized Debtors have notified or attempted to notify those
> responding claimants that their attendance is not required at this
> status hearing.* The Reorganized Debtors propose to continue this
> matter to the December 15, 2005 Omnibus Hearing for further
> status.

Proposed Hearing Agenda (Doc. # 3319) at 6 (emphasis added).  While there may have been

some misunderstanding between Ms. Boehm and Mr. Garland as to whether the claim objection

*had been* or *was to be* continued, the outcome was the same in either event.  US Airways's

motion, made on the record at the hearing, to continue the Second Omnibus objection to

December 15, 2005, was granted.  US Airways sought no substantive ruling on Mr. Garland's

claim at the October 20th hearing, nor was any action taken adverse to his claim.  The objection

was merely continued for further status.  Since the facts before the court do not support a finding

that Ms. Boehm acted in an inappropriate manner, the motion for sanctions is denied.

<u>Conclusion</u>

For the reasons stated, Mr. Garland's Motion for Summary Judgment is denied, US

Airways' Motion for Summary Judgment is granted.  Claim No. 146 filed in Case No. 02-83985-

SSM, and administratively transferred to this case for adjudication, is denied as moot.  Claim

No. 3007 filed in this case is disallowed.  In addition, Mr. Garland's Motion for Sanctions is also

denied.   A separate order will be entered consistent with this opinion.


Date: _____          _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge

Copies to:

Phillip A. Garland
P.O. Box 33934
Las Vegas, NV  89133
Creditor *pro se*

Douglas M. Foley, Esquire
McGuireWoods, LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA  23510
Local counsel for the reorganized debtor

Malcolm Mitchell, Esquire
Vorys, Sater, Seymour & Pease, L.L.P.
277 South Washington Street, Suite 310
Alexandria, VA  22314
Local counsel for the Official Committee of Unsecured Creditors

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314