UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| US AIRWAYS, INC., *et al.* | ) | Case No. 04-13819-SSM |
| | ) | Chapter 11 (Jointly Administered) |
| Debtors | ) | |

**MEMORANDUM OPINION**

This matter is before the court on the objection of the reorganized debtors to Claim No. 1 filed by Richard Sweet in the amount of $500,000 for employment discrimination under the Family and Medical Leave Act of 1993 ("FMLA"). A hearing was held on March 16, 2006, with Mr. Sweet participating by video teleconference. For the reasons stated, the claim will be disallowed.

Background

The creditor, Richard Sweet, formerly worked as a mechanic and inspector for US Airways, Inc. ("US Airways"). US Airways, together with its parent holding company and several affiliates, filed a petition for reorganization under chapter 11 of the Bankruptcy Code in this court on September 12, 2004. This was the company's second chapter 11 filing. It had previously filed a chapter 11 petition in this court on August 11, 2002, and a plan was confirmed in that case on March 18, 2003. Mr. Sweet filed a timely proof of claim in the present case in the amount of $500,000 on the ground that his termination violated the FMLA. After US Airways objected to his claim, he filed responsive pleadings asserting that

the termination also violated the whistle-blower protections of the Sarbanes-Oxley Act and increasing the amount of the claimed damages to $905,529.00.

Mr. Sweet first went to work for US Airways in 1989 as a jet engine mechanic in San Diego, California. In 1991, he was transferred to Pittsburgh, Pennsylvania, where he worked first as a mechanic but was eventually promoted to inspector. Mr. Sweet was a member of the International Association of Machinists ("IAM"), and under the collective bargaining agreement between US Airways and the IAM, promotions were based strictly on seniority. At one point in 2003, the job he filled was abolished, and he reverted to being a mechanic for approximately six weeks but was able to obtain another inspector position.

In March 2004, Mr. Sweet submitted a request for leave under the FMLA. Mr. Sweet testified that at the time he requested the leave, his physician, Dr. Eric E. Ehrenberg had him on "very, very heavy medication." Mr. Sweet further testified that he had notified his supervisor that because of the medication he was taking, there were certain things he could not do as an inspector, such as walking on a wing or walking on top of an airplane. At trial, Mr. Sweet did not specifically identify the medications other than "stuff to go to sleep at night" and "stuff to calm me down."

David Whitfield, US Airways's Senior Manager, Medical Management Services, testified that the company was receiving approximately 900 FMLA leave requests a month at the time Mr. Sweet submitted his request, and that approximately 60 to 70% were ultimately approved. At one time, such leave requests were approved by local supervisors, but by 2002 the approval authority was centralized in Mr. Whitfield's department in response to what the company perceived to be "a large amount of lost time" as a result of

FMLA leave being taken.  In any event, US Airways notified Mr. Sweet in writing within less than a week that the FMLA leave had been provisionally approved and provided him with a form entitled "Employer's Response to Employee Request for FMLA Leave."  The form stated that he was eligible for leave under the FMLA, but that he would be required to furnish medical certification of a serious health condition by April 6, 2004.  Mr. Sweet signed a statement on March 25, 2004, acknowledging that he was required to provide a signed certification by his doctor within 15 days.  A "Certification of Health Care Provider" signed by Dr. Ehrenberg was faxed to US Airways on April 9, 2004.[1]  The certification stated that Mr. Sweet was being treated for stress disorder; that the probable period of incapacity was from April 9, 2004 through July 9, 2004; that Mr. Sweet was being seen for treatment every 2 to 3 weeks; and that the course of treatment consisted of counseling and medication adjustments.  It further stated that Mr. Sweet was "[n]ot able to perform work of any kind."

On April 14, 2004, US Airways's Medical Management Services office sent Mr. Sweet a letter informing him that, based on the information provided by his health care provider, he was not approved for FMLA leave because "[t]he [health care provider] did not provide medical facts that indicate incapacity or the medical necessity for intermittent leave." At trial, Mr. Whitfield testified that US Airways does not consider "stress disorder" by itself to be a serious health condition under the FMLA.  Six days later, Dr. Ehrenberg's office called US Airways and requested a return call.  The following day, Sterling Hawkins,

---

[1] The certification was made on the form provided by US Airways and responded to every applicable question on the form.

3

the Nurse Case Manager who had written the April 14th letter, spoke with Dr. Ehrenberg's office and was told that Dr. Ehrenberg would fax additional information regarding Mr. Sweet's condition and the medical justification for time off.  Dr. Ehrenberg then sent a follow-up letter to US Airways dated April 23, 2004, that provided the following information:

> As stated in the FMLA [certification], Mr. Sweet is being treated for stress disorder, which commenced 8/16/02.  When I saw him on April 9, 2004, he was suffering from severe anxiety.  He has been having difficulty sleeping.  He is having difficulty concentrating and completing simple tasks.  I believe that medically, with the condition that he is in at this time, that he would be a danger to himself and possibly others at work until his severe anxiety is under better control.  It is estimated that patient will need off through July 9, 2004 with close follow up.

Mr. Whitfield attempted to telephone Dr. Ehrenberg on four different days to discuss the matter but was not able to speak with him personally.  Mr. Whitfield then wrote to Dr. Ehrenberg on May 10, 2004, stating that he had attempted to contact Dr. Ehrenberg on several occasions but had been unsuccessful and noting, "I have confirmed that since April 9, 2004, Mr. Sweet has been at work during his regularly scheduled hours with the exception of one day." Mr. Whitfield advised that he was available by telephone to discuss Mr. Sweet's need to be out of work due to a medical condition, but that if he did not hear from Dr. Ehrenberg, he would "consider the matter closed."  There is no evidence of any further communication by Dr. Ehrenberg.

Mr. Sweet testified that he was unaware of Mr. Whitfield's May 10th letter and believed his FMLA leave was approved.[2]  His job assignment was being changed effective

---

[2] Mr. Sweet testified that he had sent an email to US Airways's then general counsel,
(continued...)

4

May 3, 2004, and he testified that he had telephoned his new supervisor, Wade Newlon, who told him that there was no problem with the FMLA leave. Mr. Sweet had arranged to take the first two weeks of his FMLA leave as paid vacation. Although the circumstances are not entirely clear, it appears that he was approved for four additional days off known as "Days At a Time" ("DATs"). When he did not report to work on May 23, 2004, he was initially coded by his work group as "sick FMLA" pending verification of his status. However, after his supervisor was informed that the FMLA leave request had been denied, a notice was mailed to Mr. Sweet on June 11, 2004, stating that his employment was terminated, effective that same date. The stated reason for the termination was that by not contacting his supervisor or submitting a further request for medical leave with medical documentation, Mr. Sweet had "abandoned" his job.

Following the notice of termination, Mr. Sweet filed a grievance under the collective bargaining agreement and also submitted a claim for unemployment compensation. Both

---

[2](...continued)
Kathleen Harris, on April 25, 2004, complaining that the denial of his leave request was "a direct violation of the F.M.L.A. Act 825;" that his physician, Dr. Ehrenberg, was "appaled [*sic*] by the horrible way his patients are being treated and denied F.M.L.A. for legitimate reasons;" that he [Mr. Sweet] believed the denial was in retaliation for testimony he had given at a September 2002 hearing in the first US Airways case about the company's "fraudulent practices;" and that such retaliation was a violation of Section 806 of the Sarbanes-Oxley Act. He further complained:

> No one such as myself, a good, honest employee since 1989, should have to go through the mental problems and stress from the workplace as I have been through. I have survived only this long because of my obligations to my family, but now, they also see a need for me to take a long rest away from the workplace.

Ms. Harris did not reply to the email.

the grievance and the request for unemployment compensation were denied.[3] At that time, Mr. Sweet, who was then 47 years of age, was working a normal 40-hour week and earning $30.01 per hour. He acknowledged that because of reductions in force that occurred during the chapter 11 case, he would have been laid off approximately a year ago, but testified that he would have remained eligible for recall had his employment not been terminated.

## Discussion

A properly filed proof of claim is prima facie evidence of the amount and validity of the claim. Fed. R. Bankr. P. 3002(f). For that reason, the party objecting to the claim has the initial burden of presenting sufficient evidence to overcome the prima facie validity. *In re C-4 Media Cable South, L.P.,* 150 B.R. 374, 377 (Bankr. E.D. Va. 1992). Once the objecting party has done so, the ultimate burden of proof is on the creditor to establish the merits of the claim.[4] *Id.* The pleadings and evidence in the present case raise several issues for consideration. First, has Mr. Sweet carried his burden of showing a violation of the FMLA? Second, may Mr. Sweet amend the filed proof of claim after the claims bar date to allege a

---

[3] The decision denying unemployment compensation is dated July 19, 2004. The grievance hearing—referred to as a "Third Step Hearing"—was held on March 8, 2005. Mr. Sweet also filed a claim under the FMLA with the U.S. Department of Labor, Wage and Hour Division, in Pittsburgh. Because Mr. Sweet had retained a private attorney to bring an independent suit for recovery of benefits, the Department of Labor informed the attorney in October 2004 that it would take no further action on the claim.

[4] The only exception—not applicable here—is if non-bankruptcy law would place the burden of proof on the objecting party, such as in disputes over tax claims. *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct 1951, 147 L.Ed.2d 13 (2000) (finding that burden of production and persuasion on trustee's objection to tax claim is the same in bankruptcy as it would be outside of bankruptcy); *IRS v. Levy (In re Landbank Equity Corporation)*, 973 F.2d 265 (4th Cir. 1992) (holding that debtor-taxpayer has burden of proof on disallowed deductions).

violation of the Sarbanes-Oxley Act as an additional basis for recovery? And third, if the amendment were permitted, has Mr. Sweet satisfied the statutory requirements for bringing such a claim? The court will address these issues in turn.

I.

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*., allows an eligible employee to take a total of 12 work weeks of leave during any 12-month period for, among other reasons, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" in turn is defined as:

> an illness, injury, impairment, or physical or mental condition that involves —
> (A) inpatient care in a hospital, hospice, or residential medical care facility; or
> (B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11). There is no dispute that US Airways is subject to the Act; that Mr. Sweet was an eligible employee; and that Mr. Sweet followed the proper procedure for requesting leave under the FMLA. The only issue is whether US Airways was justified in denying the requested leave on the ground that Mr. Sweet was not shown to be suffering from a "serious health condition" that left him "unable to perform the functions of [his] position."

A.

As an initial matter, US Airways asserts that, as a matter of law, "stress disorder"—the condition diagnosed by Dr. Ehrenberg—does not by itself constitute a "serious health condition" under the FMLA. The cases cited by US Airways, however, do not support the proposition that stress can *never* rise to the level of a serious health

7

condition.[5] Rather, the correct rule to be derived from the reported cases is that if stress or any other mental condition is to qualify as a serious health condition under the FMLA, the employee must show (1) that the condition is grievous enough to be incapacitating; (2) that it requires continuing treatment; and (3) that the employee's absence due to illness was preceded by the required notice. *Collins v. NTN-Bower Corp.*, 272 F.3d 1006 (7th Cir. 2001); *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1434 n.3 (11th Cir. 1997); *see also Tambash v. St. Bonaventure Univ.*, No. 99-967, 2004 U.S. Dist. LEXIS 19914, 26 (W.D.N.Y. Sept. 24, 2004)*; Jones v. Willow Gardens Care Ctr.*, No. 98-0007, 2000 U. S. Dist. LEXIS 3559, at *38 (N.D. Iowa Jan. 28, 2000) ("It is clear that stress, depression, or a nervous breakdown can constitute a serious health condition under the Family Medical Leave Act of 1993."). Those cases ruling against employees claiming FMLA entitlement based on stress have done so not because stress as a matter of law cannot be a serious health condition, but because the particular facts of the case did not support such a finding. *See, e.g.*, *Price v. City of Fort Wayne*, 117 F.3d 1022 (7th Cir. 1997) ("The court below held that an assemblage of diagnoses including elevated blood pressure, hyperthyroidism, back pain, severe headaches, sinusitis, infected cyst, sore throat, swelling throat, coughing and feelings of stress and depression could not, as a matter of law, constitute a 'serious health condition.' We find that, while these conditions in this case may not rise to the level of a 'serious medical condition' as a matter of fact (a question necessarily left for the finder of fact), they are not barred from doing so as a matter of law."); *Cole v. Sisters of Charity of the Incarnate Word*, 79

---

[5] One of the cases cited by US Airways for this proposition—*Murray v. Red Kap Industries, Inc.*, 124 F.3d 695 (5th Cir. 1997)—had nothing to do with stress but rather involved a plaintiff who had an upper-respiratory illness.

F. Supp. 2d 668 (E.D. Tex. 1999) (stating that "[w]hile the plaintiff in the present case suffered stress and ultimately a day of illness, there is no evidence that she was unable to perform the functions of the job.").

B.

That said, the question nevertheless remains whether the information presented to US Airways was sufficient to show that Mr. Sweet was suffering from a serious health condition that left him unable to perform the functions of his position. The legislative history explains:

> Examples of serious health conditions include but are not limited to heart attacks, heart conditions requiring heart bypass or valve operations, most cancers, back conditions requiring extensive therapy or surgical procedures, strokes, severe respiratory conditions, spinal injuries, appendicitis, pneumonia, emphysema, severe arthritis, *severe nervous disorders*, injuries caused by serious accidents on or off the job, ongoing pregnancy, miscarriages, complications or illnesses related to pregnancy, such as severe morning sickness, the need for prenatal care, childbirth and recovery from childbirth. All of these conditions meet the general test that either the underlying health condition or the treatment for it requires that the employee be absent from work on a recurring basis or for more than a few days for treatment or recovery. They also involve either inpatient care or continuing treatment or supervision by a health care provider, and frequently involve both.

S. Rep. 103-3, 103d Cong., 1st Sess. 1993 at *28–29, 1993 U.S.C.C.A.N. 3,**30–31 (emphasis added). Since Mr. Sweet was not receiving (or slated to receive) in-patient care, a qualifying medical condition must be one that requires "continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). Implementing regulations issued by the Secretary of Labor state that this requirement is met if there is:

> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days,

9

and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

    (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

    (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider [or]

\* \* \*

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

    (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

    (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

    (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114 (1998).

One of the difficulties here is that "stress disorder," as such, does not appear to be a recognized medical diagnosis, although standard references do list both "post-traumatic stress disorder" and "acute stress disorder" as illnesses. The Merck Manual of Diagnosis and Therapy, Sec. 15, Ch. 187 (17th ed. 2005) (online at www.merck.com/mrkshared/mmanual/home.jsp). Both post-traumatic stress disorder and acute stress disorder are reactions to traumatic events. *Id*. Mr. Sweet's testimony did not identify a specific traumatic event that might have given rise to either post-traumatic stress disorder or acute stress disorder. Rather, he related a long history of pressure—including fears for his own and his family's safety—growing out of his efforts over a period of years

to bring to light what he considered to be corrupt management practices.[6] Although "stress disorder" might therefore not be the best term to apply to Mr. Sweet's condition, standard medical references do recognize "generalized anxiety disorder" as a stress-related illness that does not require a specific traumatic event as a trigger. *Id.* But regardless of the specific label that might be applied to his illness, the question remains whether either the symptoms, the treatment, or both, prevented him from performing his job.

As noted, Mr. Sweet testified he was on "very, very heavy medication" at the time he requested FMLA leave and had told his supervisor that there were certain things he could not do, such as walking on a wing or on top of an airplane. However, neither Dr. Ehrenberg's certification nor his follow-up letter identify particular medications Mr. Sweet was taking or any adverse effect those medications might have on his ability to perform his job. At the same time, the follow-up letter did provide a number of specific details that bore upon Mr. Sweet's ability to work—namely, that he was having difficulty sleeping; that he was having difficulty concentrating and completing simple tasks; and that he "would be a danger to himself and possibly others at work until is severe anxiety is under better control."

---

[6] Specifically, Mr. Sweet believed that large numbers of valuable aircraft parts, instead of being used or repaired, were simply stored in trailers and ultimately sold off in sweet-heart deals at bargain-basement prices to companies in which current or former officers or managers had a financial interest. During US Airways's first chapter 11 case, Mr. Sweet filed an emergency motion for protective and restraining order in which he expressed fear of physical or emotional harm to himself or his family from both US Airways and the IAM due to his "filing motions requesting investigation into certain allegedly fraudulent action on the part of top middle and top management of the Debtor." Mr. Sweet testified in support of that motion at a hearing held on September 5, 2002, and also separately provided information to the United States Trustee and the Creditors Committee.

C.

Given Mr. Sweet's position as an aircraft engine inspector and mechanic, an inability as a result of severe anxiety to concentrate and complete simple tasks would seem on its face to call for further inquiry before concluding that his condition was not sufficiently debilitating to justify FMLA leave.[7] The mere fact that Mr. Sweet continued to show up for work during the time his request was under consideration, while certainly some evidence that the condition was not incapacitating, is not necessarily conclusive, and the court is troubled, to say the least, that US Airways seems to have been more focused on reducing lost productivity than on dealing compassionately with its employees.

The issue before the court, however, is not whether US Airways acted compassionately, but whether it acted illegally. More specifically, the question is whether a skeptical employer is bound by the health care provider's certification. The answer, at least in the Fourth Circuit, appears to be no. *Miller v. AT&T Corp.*, 250 F.3d 820, 836 (4th Cir. 2001) ("The FMLA allows employers to require information regarding the 'medical facts' supporting a health care provider's conclusion that the employee suffered from a serious health condition.").

To be sure, the intent of the FMLA "is not to impose onerous procedural burdens on employees who need medical leaves of absence." *Harcourt v. Cincinnati Bell Tel. Co.*, 383 F. Supp. 2d 944, 962 (S.D. Ohio 2005). The statute and implementing regulations provide that

---

[7] Put another way, how many passengers would want to fly on an aircraft if the mechanic or inspector who had worked on it had been unable, as a result of a severe anxiety disorder, to properly concentrate while performing repairs or inspections? What airline would want to fly such a plane?

12

an FMLA certification is sufficient if it is complete and signed by the health care provider and states "(1) the date on which the serious health condition commenced; (2) the probable duration of the condition; [and] (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition[.]" 29 U.S.C. § 2613(b); 29 C.F.R. § 825.307(a). To be complete, a medical certification must include "a brief statement as to how the medical facts meet the criteria of the definition" of "serious health condition." 29 C.F.R. § 825.306(b)(1). The regulations further provide that if the employer views the certification as incomplete, the employer shall advise the employee of this belief and "provide the employee a reasonable opportunity to cure any . . . deficiency." 29 C.F.R. § 825.305(c). The FMLA itself provides that when the employer "has reason to doubt the validity" of the medical certification, "the employer *may* require" a second opinion by a doctor of the employer's choosing. 29 U.S.C. § 2613(c) (emphasis added). If the second opinion conflicts with the certification, the employer "may" require a third opinion, which would then be binding on both the employer and the employee. 29 U.S.C. § 2613(d). However, where an employer has reason to believe that the employee is not really sick, the employee is not entitled to judgment as a matter of law merely because the employer failed to pursue the FMLA's second and third opinion procedures. *Rhoads v. FDIC*, 257 F.3d 373, 386 (4th Cir. 2001); *Stekloff v. St. John's Mercy Health Systems*, 218 F.3d 858 (8th Cir. 2000); *but see Miller v. AT&T Corp.*, 60 F.Supp. 2d 574, 580 (S.D. W.Va. 1999), *aff'd* 250 F.3d 820 (4th Cir. 2001) (employer's failure to procure second medical opinion precluded it from challenging treating physician's certification that flu was a serious health condition covered

13

by the FMLA notwithstanding regulation stating that flu was ordinarily not a serious health condition).[8]

Accordingly, even if this court were to hold that Dr. Ehrenberg's certification and follow-up letter sufficiently satisfied the requirements of the FMLA, the failure by US Airways to seek a second opinion does not automatically entitle Mr. Sweet to an award of damages. Rather, once FMLA leave is denied, the employee must independently prove that he or she suffered from a serious health condition as defined by the Act. *See Rhoads,* 257 F.3d 373, 384 (4th Cir. 2001) (holding that plaintiff must prove she was afflicted with an FMLA-qualifying condition in order to establish that she had a cognizable right that was interfered with); *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997) (holding that plaintiff must establish by a preponderance of the evidence that he suffers from a qualified condition). The certification itself is not evidence and is not sufficient to carry the burden of proof. Although there may be cases in which the existence of a serious health

---

[8] It is admittedly not easy to reconcile the Fourth Circuit opinions in *Miller* and *Rhoads*—both of them decided in the same year. In *Miller*, the district court had determined that "an employer who wishes to contest the validity of a medical certification must use the second-opinion procedures of § 2613(c)-(d)." 60 F.Supp. at 580. The Fourth Circuit affirmed the district court's judgment awarding back-pay and attorney's fees to the employee without specifically reaching the issue of whether obtaining a second opinion was mandatory or optional. Although the Fourth Circuit noted that "the district court criticized AT & T for failing to follow the 'second opinion' procedures in the FMLA," the Court held that a second opinion would have been of no use because the employer merely questioned whether the employee had received treatment on two or more occasions and whether the illness in question—the flu—was covered by the FMLA. 250 F.3d at 835 n.13. In *Rhoads*, the Court, although observing that there were "potential pitfalls for an employer who chooses not to pursue a second opinion," nevertheless held that "an employer who questions the validity of a certification has the option of seeking a second and third opinion, without being required to do so," and is not, by failing to seek a second opinion, "foreclosed from challenging whether an employee suffered from a serious health condition." 257 F.3d at 386.

condition may be proven by the employee's own testimony without having to call the treating physician or another medical professional to testify, the existence and seriousness of an anxiety disorder would normally require medical testimony. Since no such testimony was presented in this case,[9] the court must find that Mr. Sweet has failed to carry his evidentiary burden that he was suffering from a serious health condition that left him unable to perform the functions of his position. For that reason, the court is unable to find that Mr. Sweet was terminated in violation of the FMLA.[10]

II.

Although Mr. Sweet never formally amended his proof of claim to allege a right to recovery under any cause of action other than the FMLA, in his response—filed after the claims bar date—to US Airways's objection, he asserted that his termination also violated the whistle-blower protections of the Sarbanes-Oxley Act, and he increased the amount of

---

[9] The court recognizes that presenting Dr. Ehrenberg's testimony would have involved logistical difficulties, since the hearing on the claim objection took place in Alexandria, Virginia; Mr. Sweet participated by video teleconference from the U.S. Bankruptcy Court in Cedar Rapids, Iowa; and Dr. Ehrenberg's office is in Beaver Falls, Pennsylvania. However, there is no obvious reason why Dr. Ehrenberg's testimony could not have been presented by way of deposition. Fed.R.Evid. 804(b)(1); Fed.R.Bankr.P. 7032 (incorporating Fed.R.Civ.P. 32(a)(3)(B)).

[10] This is not to say that the court agrees with US Airways that Mr. Sweet "abandoned" his employment with the company. Mr. Sweet's evidence is sufficient to establish that he honestly and reasonably believed—based on what his doctor and his new supervisor had told him after the initial denial letter—that his FMLA leave request had been approved. However, any right that Mr. Sweet might have had—in the absence of the FMLA or some other discrimination statute—not to be terminated except for willful misconduct would arise only under the terms of the collective bargaining agreement between US Airways and the IAM. The ruling against Mr. Sweet in the grievance hearing, and the IAM's refusal to seek further review of the grievance by arbitration, preclude any ruling by this court that he was terminated in violation of the collective bargaining agreement.

his claimed damages from $500,000.00 to $900,000.00. At the hearing, the court ruled that Mr. Sweet would not be permitted to amend the claim, but that even if amendment were permitted, the claim would fail because Mr. Sweet had not satisfied the statutory requirements for bringing a private action under the Sarbanes-Oxley Act. Although the reasons for that ruling were set forth on the record at the hearing, some brief discussion is appropriate.

A.

As a general proposition, courts have held that amendment of a timely-filed proof of claim should be freely allowed, even after the claims bar date has passed, to cure a defect in the claim as filed or to describe the claim with greater particularity, so long as the amendment will not cause undue prejudice to the debtor or to other creditors. *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.),* 754 F.2d 811 (9th Cir. 1985); *Unioil v. Elledge (In re Unioil, Inc.)*, 962 F.2d 988 (10th Cir. 1992) (amendment allowed of defective claim filed by individual to show trust as true creditor); *Newcomb v. United States (In re Newcomb)*, 60 B.R. 520 (Bankr. W.D. Va. 1986) (amendment of IRS claim allowed to add omitted quarter where chapter 13 plan had sufficient funds to pay amended claim); *but see United States v. Vlavianos (In re Vlavianos)*, 71 B.R. 789, 793–94 (Bankr. W.D. Va. 1986) (disallowing amendment of IRS proof of claim after debtor completed payments under chapter 13 plan in reliance on filed claim). However, a new and different claim may not, in the guise of an "amendment" to an existing claim, be asserted after the bar date has passed. *United States v. Int'l Horizons, Inc. (In re Int'l Horizons, Inc.),* 751 F.2d 1212 (11th Cir. 1985); *Matter of Stavriotis*, 977 F.2d 1202 (7th Cir. 1992).

In the present case, the court would have to conclude that even though the Sarbanes-Oxley claim focuses on the same culminating act—namely, the termination of Mr. Sweet's employment—the facts that would be required to prove a Sarbanes-Oxley violation are so distinct from those that would be required to prove an FMLA violation, that the Sarbanes-Oxley claim must fairly be considered a new and different claim. The one claim centers on Mr. Sweet's health; the other on alleged corruption by US Airways's management. This is not a case, moreover, in which the claim was filed by a litigant who was pro se. *See Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir 1978) (holding that courts must liberally construe the pleadings of pro se parties, and noting, "In the great run of pro se cases, the issues are faintly articulated and often only dimly perceived.") The filed proof of claim in this case was prepared by an attorney retained by Mr. Sweet. While it clearly sets forth a claim for violation of the FMLA, it asserts no facts even remotely suggestive of a Sarbanes-Oxley claim. Accordingly, any whistle-blower claim under the Sarbanes-Oxley Act is barred by failure to assert it prior to the claims bar date.

B.

But even if the court were to permit the late assertion of a Sarbanes-Oxley claim,[11] it seems clear that Mr. Sweet has not satisfied the statutory requirement for bringing such a claim. The Sarbanes-Oxley Act was signed into law on July 30, 2002. Title VIII of the Act, which is identified as the Corporate and Criminal Fraud Accountability Act of 2002, specifically provides certain "whistleblower" protections to employees of publicly-traded

---

[11] A late-filed claim may be allowed in a chapter 11 case if the late filing was the result of "excusable neglect." *See Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

companies.  Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, Title VIII, § 806(a), 116 Stat. 802 (2002) (codified at 18 U.S.C. § 1514A).  Under the terms of the Act, a covered employer may not:

> discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee [including] . . .to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

18 U.S.C. § 1514A(a)(2).

An employee who suffers retaliation or other discrimination under Sarbanes-Oxley may bring an action against the employer for reinstatement, back pay, and special damages. 18 U.S.C. § 1514A(b).  However, before an employee may file a complaint in federal court, he or she must file a complaint with the Secretary of Labor within ninety days after the violation occurs. 18 U.S.C. § 1514A(b)(1)(A), (2)(D).  The Secretary of Labor has delegated the responsibility for adjudicating such complaints to the Occupational Safety and Health Administration (OSHA). *See* Secretary's Order 5-2002; Delegation of Authority and Assignment of Responsibility to the Assistant Secretary for Occupational Safety and Health, 67 Fed. Reg. 65008-01 (Oct. 22, 2002); 29 C.F.R. § 1980.103(c) (2004); *Zhu v. Federal Housing Finance Bd.,* 389 F. Supp. 2d 1253 (D. Kan. 2005) ("Before an employee can assert a cause of action in federal court under the Sarbanes-Oxley Act, he or she must file a complaint with [OSHA] and afford OSHA the opportunity to resolve the allegations administratively.  The administrative complaint must be filed within 90 days after an alleged

violation of the Act and include a full statement of the acts and omissions, with pertinent dates, which are believed to constitute the violations.") (internal citations omitted).

As a threshold matter, then, in order for Mr. Sweet to assert a private cause of action under Sarbanes-Oxley, he must have filed a compliant with OSHA within ninety days of the alleged violation of the Act.  The last date the Act could have been violated was June 11, 2004, the date his employment was terminated.  Mr. Sweet admitted in his deposition that he never filed a complaint with OSHA. *See* Sweet Deposition Tr. pp. 99–102.  Since the ninety-day period expired prior to the filing of the chapter 11 petition in the present case, there is no issue of the period having been tolled.  *See* § 108(c), Bankruptcy Code.  Because Mr. Sweet failed to timely invoke his administrative remedies under the Act, this court lacks the power to consider his Sarbanes-Oxley claim regardless of whether the claim itself is with or without merit. *See Zhu*, 289 F. Supp.2d at 1272.

## Conclusion

For the reasons stated, the court determines that Mr. Sweet has failed to carry his burden of proof with respect to his claim for retaliatory discharge under the FMLA.  To the extent that he seeks to amend his claim after the claims bar date to also allege retaliatory discharge under the Sarbanes-Oxley Act, the court declines to allow the amendment—not only because it comes so late that it would prejudice the efficient administration of the case, but because the amendment would be futile in light of the failure to timely file a complaint

with the Secretary of Labor. A separate order will be entered consistent with this opinion disallowing the claim.

Date: _____  _____
                                                                Stephen S. Mitchell
Alexandria, Virginia                      United States Bankruptcy Judge

Copies to:

Daniel M. Blanks, Esquire
McGuireWoods, LLP
9000 World Trade Center
101 West Main Street
Norfolk, VA 23510
Counsel for the reorganized debtors

Richard L. Sweet
1010 Tanglewood Drive
McGregor, Iowa   52157
Creditor

Malcolm Mitchell, Esquire
Vorys, Sater, Seymour & Pease, L.L.P.
277 South Washington Street, Suite 310
Alexandria, VA  22314
Local counsel for the Official Committee of Unsecured Creditors

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314