UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| US AIRWAYS, INC., *et al.* | ) | Case No. 04-13819-SSM |
| | ) | Chapter 11 (Jointly Administered) |
| Debtors | ) | |

**MEMORANDUM OPINION
ON OBJECTION TO ADMINISTRATIVE CLAIM
OF THOMAS TIFFANY**

A hearing was held in open court on July 20, 2006, on the objection of the reorganized debtors to the administrative claim filed by Thomas Tiffany in the amount of $600,000. Mr. Tiffany, who participated in the hearing by telephone, is employed by the debtor as an airline pilot. In a prior chapter 11 case filed by the debtor, the defined benefit retirement plan for pilots of US Airways was terminated, and the assets of the plan were turned over to the Pension Benefit Guaranty Corporation ("PBGC"), a government agency created by Congress to insure the payment of pension benefits to retirees. Mr. Tiffany's administrative claim in this case is for what he calculates as the difference between the benefit that the PBGC will pay him once he retires and what he would have received under the terminated plan. For the reasons stated, the claim must be disallowed.

Background

US Airways, together with its parent holding company and several affiliates, filed a petition for reorganization under chapter 11 of the Bankruptcy Code in this court on September 12, 2004. This was the company's second chapter 11 filing. It had previously

filed a chapter 11 petition in this court on August 11, 2002.  During the first case, the debtor brought a motion to approve a distress termination of the pension plan for pilots of US Airways, Inc.  That motion was approved — subject to a determination that termination would not violate the terms of the collective bargaining agreement — by an order entered March 2, 2003.  *In re US Airways Group, Inc.*, 296 B.R. 734 (Bankr. E.D. Va. 2003).  An appeal was taken from the order by a group of retired pilots but was dismissed on equitable mootness grounds. *Retired Pilots Ass'n of US Airways, Inc. v. US Airways Group, Inc.,* 369 F.3d 806 (4th Cir. 2004).  A plan was confirmed in the first case on March 18, 2003, under which allowed unsecured claims (except for a convenience class of small claims) would not be paid in cash but would instead receive stock in the reorganized company.  The assets of the retirement plan were turned over to the PBGC, which filed a proof of claim for the full amount of what it calculated to be the underfunding of the plan — that is, the difference between the value of the plan assets turned over to it and the present value of the future payments owed to the beneficiaries of the plan.[1]  Following an evidentiary hearing, this court allowed the claim in full.  *In re US Airways Group, Inc*., 303 B.R. 784 (Bankr. E.D. Va. 2003).  No appeal was taken from that ruling, and the PBGC received a distribution of stock in the reorganized company in satisfaction of its claim.

As noted, the present chapter 11 case was filed on September 12, 2004.  Mr. Tiffany filed a secured claim (Claim No. 1444) in the amount of $600,000 on December 7, 2004.

---

[1] It is important to note that the PBGC's claim is not restricted to the amount needed to pay the guaranteed benefit but is for the full amount needed to pay the contractual benefit owed to plan participants.  Although payment of benefits by the PBGC is guaranteed only up to a certain amount, the PBGC will pay benefits beyond the guaranteed amount to the extent plan assets permit.

That claim was disallowed on August 24, 2005. Order Sustaining Debtors' Second Omnibus Objection to Certain Claims, Ex. C at 13 (Doc. # 2912). In the interim, Mr. Tiffany had filed an administrative claim (Claim No. 5264) on July 22, 2005. The administrative claim is for the same amount, and is based on the same grounds, as the earlier claim. On May 10, 2006, the reorganized debtors objected to Mr. Tiffany's administrative claim as part of its Second Omnibus Objection to Certain Administrative Claims (Doc. # 3955) at 8-9 & Ex. D. The reorganized debtors contend that Mr. Tiffany's claim should be disallowed because it does not constitute an administrative expense and because "there is no legal basis for the Reorganized Debtors' liability on account of such claims."

<u>Discussion</u>

Mr. Tiffany's claim must be disallowed for two reasons. First, the claim does not qualify as an administrative expense claim. Second, the fundamental premise on which the claim is based is incorrect.

A.

As the reorganized debtors correctly observe, Mr. Tiffany's claim is not an administrative expense as defined by Section 503(b) of the Bankruptcy Code. In a bankruptcy case, a court may allow, as an expense of administration, "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." § 503(b)(1)(A), Bankruptcy Code. Administrative expenses are accorded priority in distribution, and are paid ahead of claims having a lesser priority (including general unsecured claims). §§ 507(a)(1) and 726(a)(1),

Bankruptcy Code.[2]  A request for payment of an administrative expense will qualify if (a) the right to payment arose from a post-petition transaction with the debtor's estate; and (b) the consideration supporting the right to payment was beneficial to the estate of the debtor. *See In re Hemingway Transp., Inc.,* 954 F.2d 1, 5 (1st Cir. 1992).  A claim arises, for administrative expense purposes, when the acts giving rise to the liability occur, even if the payment does not becomes due, or damages are not experienced, until some future time.  *See In re The Bentley Funding Group, LLC*, No. 00-13386, 2001 WL 3405425 (Bankr. E.D. Va., Jan. 2, 2001) (where indemnity agreement between bonding company and debtor land developer was entered into prior to the bankruptcy, the bonding company's claim for post-petition costs of completing subdivision improvements was not an administrative expense claim);  *In re Dornier Aviation (North America), Inc.*, Nos. 02-82003 and 02-82004, 2002 WL 31999222 (Bankr. E.D. Va., Dec. 18, 2002) (severance pay owned under a prepetition employment agreement was not an administrative claim even though the employee worked for 86 days after the bankruptcy petition was filed).[3]

Mr. Tiffany asserts the basis for his claim to be unpaid compensation for services performed from the beginning of his employment with the debtor on March 2, 1987, to the present.  The specific events giving rise to his claim, however, are the distress termination of

---

[2]  For cases filed on or after October 17, 2005, administrative expenses claims are now subordinate to claims for "domestic support obligations," such as child support and alimony, but remain senior to all other unsecured claims.  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8.

[3]  The *Bentley Funding* and *Dornier Aviation* opinions are available on the court's Internet web site at http://www.vaeb.uscourts.gov/opinions/ssm/bentley_axa%20admin%20claim.pdf and http://www.vaeb.uscourts.gov/opinions/ssm/fairchild_neely.pdf.

the pilots pension plan and the turnover of the plan assets to the PBGC, both of which occurred during the first chapter 11 case, and long before the filing of the present case. While Mr. Tiffany will not experience any actual loss of income from the termination of the plan until the time he actually retires, his claim for the reduction in retirement benefits—even if it were allowable as a claim against the debtors—is nevertheless a prepetition claim and not an administrative expense claim.[4]

B.

But even if Mr. Tiffany's claim could be construed as arising from a post-petition transaction with the debtor, it would have to be disallowed because it duplicates the allowed claim of the PBGC in the prior chapter 11 case and because it proceeds from the incorrect premise that the funds in the plan belonged to him and the other pilots and should not have been turned over to the PBGC.

Title IV of the Employee Retirement Income Security Act of 1974 (ERISA) created a mandatory government insurance program that is administered by the PBGC. The insurance program was created to protect "private-sector workers participating in covered pension plans against the termination of their plans before sufficient funds have been accumulated to pay anticipated benefits." *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 637, 110 S. Ct. 2668, 2671, 110 L.Ed.2d 579 (1990). Under Title IV of ERISA, when a defined benefit

---

[4] Indeed, since the events giving rise to the claim occurred prior to confirmation of the plan in the first chapter 11 case, and since confirmation of a chapter 11 plan discharges a debtor that continues to engage in business from all pre-confirmation claims, § 1141(d), Bankruptcy Code, the claim now being asserted was allowable, if at all, only in the first chapter 11 case.

pension plan terminates with insufficient assets, the PBGC becomes trustee of the plan and takes over the plan's assets and liabilities.  See 29 U.S.C. §1344.

Upon assumption of the plan's assets and liabilities, the employer becomes liable to the PBGC for the "total amount of the unfunded benefit liabilities under the plan (as of the termination date) …" 29 U.S.C. 1362 (b)(1)(B)(a).  The PBGC filed a timely claim in the first chapter 11 case for the unfunded liabilities under the plan, and that claim was allowed in full by this court in December 2003.  Any claim by individual plan participants would be therefore duplicative of the PBGC's claim.

To this, Mr. Tiffany rejoins that the debtor had no right to turn over the funds, and the PBGC had no proper claim to them, because the money in the plan belonged its beneficiaries.  As noted earlier, however, Congress, through Title IV of ERISA, put forth a comprehensive statutory scheme that governs the transfer of a terminated defined benefit plan's assets from an employer to the PBGC.  Because ERISA is controlling, Mr. Tiffany's argument that the plan assets should have been turned over to him and the other plan participants in unavailing.

Additionally, the fundamental premise of Mr. Tiffany's argument—that there are specific dollars in the plan that have his name on them—is incorrect.  The Retirement Plan for Pilots of US Airways, Inc., is a defined benefit plan under 29 U.S.C. § 1002(35).  A defined benefit plan is a plan that "promises to pay employees, upon retirement a fixed benefit under a formula that takes into account factors such as final salary and years of service with the employer." *LTV*, 496 U.S. at 637, 110 S.Ct. at 2671.  Under such a plan, an employee is entitled to a fixed annuity

upon retirement for the remainder of the retiree's life.[5]  This type of plan does not, however, give an employee ownership over a discrete portion of the plan's assets.  An employee is only entitled to the fixed benefit under the plan upon retirement.

ERISA distinguishes a defined benefit plan from a defined contribution plan.  See 29 U.S.C. § 1002(34).  A defined contribution plan is one under which an employer "typically contributes a percentage of an employee's compensation to an account, and the employee is entitled to the account after retirement."  *Pension Benefit Guaranty Corp.*, 496 U.S. at 637, 110 S.Ct. at 2671.  An example of a defined contribution plan is a 401(k) plan, in which an employee, and not the employer, holds title to and exercises control over the account.  ERISA does not insure these types of plans because "employees are not promised any particular level of benefits; instead, they are promised only that they will receive the balances in their individual accounts." *Id.*  If the U.S. Airways Pilot's Retirement Plan were a defined contribution plan under 29 U.S.C. § 1002(34), then Mr. Tiffany would be correct in assuming that he is entitled to a fixed portion of the plan's assets.  This, however, is not the case.  Mr. Tiffany is only entitled to the contractual benefits under the plan, as modified by ERISA upon the plan termination.  To allow Mr. Tiffany to assert a claim against the employer to recover the difference between what he would have received under the plan had it not been terminated and what he will receive from

---

[5] The retirement plan for pilots of US Airways did include an option for a pilot, on retirement, to receive a lump sum payment rather than an annuity.  The details of how the lump sum was computed are not part of the record before the court, but presumably it represented the commuted value of the annuity.  In any event, the fact that a particular defined-benefit plan has a lump sum payment option does not affect the underlying analysis of whether plan participants own the funds in the plan or merely have a contractual right to payment.

the PBGC would not only be duplicative of the PBGC's own claim but would also be inconsistent with the Congressional scheme embodied in Title IV of ERISA.

## Conclusion

In summary, the court finds that Mr. Tiffany's claim should be disallowed because the claim is not an administrative claim as defined by the Bankruptcy Code and its fundamental premise that Mr. Tiffany owns the funds now transferred to the PBGC is flawed.    A separate order will be entered disallowing the claim.

Date: _____          _____
                                     Stephen S. Mitchell
Alexandria, Virginia                 United States Bankruptcy Judge

Copies to:

Thomas Tiffany
100 Luna Lane
Johnstown, PA 15904
Administrative claimant

Douglas M. Foley, Esquire
McGuireWoods, LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA 23510
Local counsel for the reorganized debtor

Malcolm Mitchell, Esquire
Vorys, Sater, Seymour & Pease, L.L.P.
277 South Washington Street, Suite 310
Alexandria, VA 22314
Local counsel for the Official Committee of Unsecured Creditors

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA 22314