UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
    US AIRWAYS, INC., *et al.*               )     Case No. 04-13819-SSM
                                          )     Chapter 11 (Jointly Administered)
               Debtors               )

## MEMORANDUM OPINION

This matter is before the court on the reorganized debtors' motion for summary judgment disallowing Claim No. 1868 filed by Douglas Christen in the amount of $1,300,000. Although the proof of claim itself is silent as to the basis for the debtor's liability, the parties explained at a hearing held on October 18, 2007, that the claim is for lost retirement benefits under a retirement plan for the pilots of US Airways, Inc., that was terminated in a prior chapter 11 case. The assets of the retirement plan were turned over to the Pension Benefit Guaranty Corporation ("PBGC"), which filed and was allowed a $2.084 billion claim for the benefits owed to the beneficiaries of the plan. Because Mr. Christen's claim is duplicative of the PBGC's claim in the prior case, and because any individual claim he might have had was discharged by plan confirmation in the prior case, the claim filed in this case must be disallowed.

Background

At the time of the events at issue, US Airways, Inc., was the seventh largest airline in the United States. Together with its parent holding company and several affiliates, it filed a petition for reorganization under chapter 11 of the Bankruptcy Code in this court on September 12, 2004, and a joint reorganization plan was confirmed on September 16, 2005. This was the second

chapter 11 case filed by the company. The first case was filed on August 11, 2002. During that case, the court established a deadline of November 4, 2002, for non-governmental entities to file proofs of claim. Mr. Christen did not file a proof of claim in that case. During the first case, the debtor brought a motion to approve a distress termination of the pension plan for pilots of US Airways, Inc. That motion was granted—subject to a determination that termination would not violate the terms of the collective bargaining agreement —by an order entered March 2, 2003. *In re US Airways Group, Inc.,* 296 B.R. 734 (Bankr. E.D. Va. 2003), *dismissal of appeal aff'd, Retired Pilots Ass'n of US Airways, Inc. v. U.S Airways Group, Inc.*, 369 F.3d 806 (4th Cir. 2004). The pilots' union ultimately agreed to the termination of the plan, and the plan assets were turned over to the PBGC, which filed a proof of claim for the full amount ($2,083,600,000) of what it calculated to be the underfunding of the plan—that is, the difference between the value of the plan assets it received and the present value of the future payments owed to the beneficiaries of the plan.[1] The court allowed the claim in full. *In re US Airways Group, Inc.,* 303 B.R. 784 (Bankr. E.D. Va. 2003).[2] Upon confirmation of a joint plan of reorganization in the first case, the court established a deadline of May 15, 2003, for the filing of administrative expense claims. Mr. Christen did not file an administrative claim.

---

[1] PBGC's claim was not restricted to the amount needed to pay the guaranteed benefit under its insurance program, but included the full amount needed to pay the contractual benefit owed to plan participants. The PBGC will pay benefits beyond the guaranteed amount to the extent plan assets permit.

[2] Although the *claim* was allowed in full, that did not mean the PBGC was able to collect the full amount. Under the confirmed plan, unsecured creditors in the first US Airways case received a distribution of newly-issued stock in the reorganized debtor that had an estimated value, at the time the plan was confirmed, of approximately two cents on the dollar.

In the present case, Mr. Christen filed a timely unsecured priority claim against US Airways, Inc., in the amount of $1,300,000.00 (Claim No.1868). The proof of claim was not signed, did not state the basis of the claim or the date the debt was incurred, and did not attach any supporting documents or calculations. On July 29, 2005, the debtors objected to the claim as part of their Fourth Omnibus Objection to claims. The stated basis of the objection was that the liability was not reflected on the debtors' books and records. Mr. Christen filed a response on August 24, 2005, that did not address the merits of the claim but simply requested a hearing. The objection was routinely carried over a number of times to give the parties an opportunity to settle the dispute or narrow the areas of disagreement. On September 28, 2007, the debtors filed the motion for summary judgment that is presently before the court. Mr. Christen filed a response requesting a hearing but did not submit any affidavits or documents, or even a memorandum of law, in support of his claim. Mr. Christen appeared telephonically at the hearing on the summary judgment motion. Counsel for US Airways advised the court that, although Mr. Christen had not filed any documents with the court, he had furnished her with a chart (which he had apparently received at a seminar) showing the difference between what he will receive over his lifetime when he retires as a pilot from US Airways and what he would have received if the pilots' pension plan had not been terminated in the first US Airways case.[3] Mr. Christen's position, as set forth orally at the hearing, essentially boiled down to an argument that the termination of the pension plan had never been necessary and was based on bogus

---

[3] Since those calculations have not been provided to the court, the court expresses no view as to their correctness. It is not even clear if the figure claimed represents the present actuarial value of the lost retirement benefits or instead the total dollar difference over Mr. Christen's projected lifetime.

financial projections; that the company is now prospering; that pilots at the now-merged US Airways and America West Airlines are among the lowest paid in the industry; and that it is inequitable for the company, having returned to financial health, not to pay the promised benefits to pilots who have worked so many years for the company in reliance on that promise.

<u>Discussion</u>

I.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056. Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1985). When a summary judgment motion is filed and properly supported, the opposing party may not simply rely on assertions or denials in its pleadings but must produce evidence, in the form of affidavits or otherwise, that would be sufficient to carry that party's burden of proof at trial. Fed.R.Civ.P. 56(e).

A properly-filed proof of claim is prima facie evidence of the amount and validity of the claim. Fed.R.Bankr.P. 3001(f). Accordingly, when such a claim has been filed, the objecting party has the initial burden of producing sufficient evidence to overcome the prima facie effect. *In re C-4 Media Cable South, L.P.*, 150 B.R. 374, 377 (Bankr. E.D. Va. 1992). Once that is done, the ultimate burden of proof shifts to the creditor, unless non-bankruptcy law would place

4

that burden on the debtor. *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct 1951, 147 L.Ed.2d 13 (2000). A proof of claim is required to conform substantially to Official Form 10; must be signed by the creditor or the creditor's authorized agent; and, when the claim is based on a writing, must have a copy of the writing attached. Fed.R.Bankr.P. 3001(a), (b), and (c). Mr. Christen's claim omits certain basic information required by the official form (in particular, the basis of the claim and the date the debt was incurred); is unsigned; and contains no copies of any documents supporting the claim. Based on those deficiencies, the proof of claim does not constitute prima facie evidence of the validity or amount of the claim, and both the burden of initially producing evidence and the ultimate burden of persuasion therefore fall squarely on Mr. Christen. No evidence of any kind whatsoever has been filed by him in response to the summary judgment motion. Accordingly, because Mr. Christen has failed to show that any evidence supports his claim, the court would be justified in disallowing the claim without further discussion of the issues.

II.

But even if Mr. Christen had produced some evidence to show the amount of his loss, the claim would have to be disallowed for two reasons: first, because the claim is duplicative of the PBGC's claim in the first chapter 11 case; and second, because any claim Mr. Christen might have that was independent of the PBGC's was discharged in the prior case.

A.

Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA") created a mandatory government insurance program that is administered by the PBGC. The insurance program was created to protect "private-sector workers participating in covered pension plans

5

against the termination of their plans before sufficient funds have been accumulated to pay anticipated benefits." *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 637, 110 S. Ct. 2668, 2671, 110 L.Ed.2d 579 (1990). Under Title IV of ERISA, when a defined benefit pension plan terminates with insufficient assets, the PBGC becomes trustee of the plan and takes over the plan's assets and liabilities. *See* 29 U.S.C. § 1344.

Upon the transfer of the plan's assets and liabilities, the employer becomes liable to the PBGC for the "total amount of the unfunded benefit liabilities under the plan (as of the termination date) …" 29 U.S.C. 1362 (b)(1)(B)(a). The PBGC filed a timely claim in the first US Airways case for $2,083,600,000, which it computed as the full amount of the unfunded liabilities under the pilots' retirement plan. That claim, as noted, was allowed in full by this court. Any claim by individual plan participants would therefore be duplicative of the PBGC's claim and would be inconsistent with the Congressional scheme embodied in Title IV of ERISA. *See In re US Airways, Inc.*, No. 04-13819 (Bankr. E.D. Va., August 11, 2006), Memorandum Opinion Disallowing Claim of Thomas Tiffany.

B.

But even if Mr. Christen's claim were not duplicative of the PBGC's claim, it would have to be disallowed for an equally fundamental reason, namely, that it was discharged in the first chapter 11 case. Among the grounds for disallowance of a claim is that it is unenforceable against the debtor or property of the debtor for a reason other than because it is contingent or unmatured. § 502(b)(1), Bankruptcy Code. One of the consequences of a bankruptcy discharge is that it renders a claim unenforceable as a personal liability of a debtor. § 524(a), Bankruptcy Code. Confirmation of a chapter 11 plan operates as a discharge of all debts arising prior to

confirmation. § 1141(d)(1), Bankruptcy Code. A debt "arises," for bankruptcy purposes, not when the effects are felt but when the act giving rise to the liability occurs. *Grady v. A. H. Robins Co.*, 839 F.2d 198 (4th Cir. 1988) (holding that women who had been implanted with the debtor's contraceptive device, known as the Dalkon Shield, prior to the company's chapter 11 filing but who had not suffered any injury until after the petition was filed had a "claim" that was subject to the automatic stay); *see also In re Bentley Funding Group, LLC*, 2001 WL 34054525 (Bankr. E.D. Va., Feb. 2, 2001) (surety's post-petition performance of debtor's pre-petition subdivision bonding obligations was a prepetition, not post-petition, claim because the surety's right to indemnity existed as a contingent claim from the date the indemnity agreement was executed.); *In re Dornier Aviation (North America), Inc.*, 2002 WL 31999222 (Bankr. E.D. Va., Dec. 18, 2002) (severance pay claim of employee who was not terminated until 86 days after chapter 11 was filed was nevertheless a prepetition, not post-petition, claim where the employment contract under which the claim arose was entered into prior to the bankruptcy filing); *In re US Airways, Inc.*, 365 B.R. 624 (Bankr. E.D. Va. 2007) (disallowing claim for employment discrimination because events giving rise to the claim occurred pre-confirmation in first US Airways case and was therefore discharged). Accordingly, because the event giving rise to Mr. Christen's claim—the distress termination of the retirement plan—occurred prior to confirmation in the first case, any individual claim he might have had independent of the PBGC's was discharged in the first case, even though the effects of the termination will not be felt he retires.

    The analysis would not be changed if, as Mr. Christen asserts, the termination of the pilots' pension plan could now be shown to have been improvident and unnecessary because US

Airways is now thriving. Aside from the fact that no evidence, only argument, was offered in support of that assertion, well-established principles of finality would prevent a collateral attack in this case of the orders in the prior case approving the termination of the pension plan and confirming a reorganization plan that was predicated in part on the termination.

A separate order will be entered granting the motion for summary judgment and disallowing the claim.

Date: _____       _____
                                    Stephen S. Mitchell
Alexandria, Virginia                United States Bankruptcy Judge

Copies to:

Douglas Christen
3904 Emma Court
Indian Trail, N.C. 25079
Creditor *pro se*

Douglas M. Foley, Esquire
McGuireWoods, LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA  23510
Counsel for the reorganized debtors

Malcolm Mitchell, Esquire
Vorys, Sater, Seymour & Pease, L.L.P.
277 South Washington Street, Suite 310
Alexandria, VA  22314
Counsel for the Official Committee of Unsecured Creditors

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314